## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DREW RANKIN,
    *Plaintiff,*

    v.

CONNECTICUT MUNICIPAL ELECTRIC
ENERGY COOPERATIVE,
    *Defendant, Third-Party Plaintiff,*

    v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
    *Third-Party Defendant.*

No. 3:23-cv-00805 (JAM)

## RULING ON MOTIONS TO DISMISS AND MOTION TO STAY

This case is about who—if anyone—will pay for a corporate officer's defense against federal criminal charges. The plaintiff, Drew Rankin, is the former CEO of defendant Connecticut Municipal Electric Energy Cooperative ("CMEEC"). Rankin has been twice indicted by the federal government and has incurred and expects to incur large amounts of legal fees for his defense.

After previously paying for Rankin's fees, CMEEC has stopped doing so. CMEEC's decision prompted Rankin to file this lawsuit to require CMEEC to keep paying. But CMEEC has now moved to dismiss Rankin's complaint.

CMEEC has also filed a third-party complaint against its insurer, National Union Fire Insurance Company of Pittsburgh, PA. But National Union has now moved to dismiss CMEEC's claims and for a stay of the proceedings against it.

For the reasons set forth below, I will grant in part and deny in part CMEEC's motion to

1

dismiss Rankin's complaint. In addition, I will deny National Union's motion to dismiss and motion to stay.

**BACKGROUND**

This case stems from two federal criminal cases against Rankin that arise from his prior employment with CMEEC.  In the first case, Rankin was convicted by a jury on one count of intentionally misappropriating CMEEC property in violation of 18 U.S.C. § 666(a)(1)(A). This case is currently on appeal. *See United States v. Rankin et al.*, 3:18-cr-00272-JAM; *see also United States v. Rankin*, 651 F. Supp. 3d 523 (D. Conn. 2023) (describing charges and evidence). In the second case, Rankin has been indicted on separate charges of misappropriating CMEEC property. *See United States v. Rankin et al.*, 3:18-cr-00273-JAM. The trial of this second case awaits the outcome of Rankin's appeal in the first case.

From the time of Rankin's indictment until mid-2023, CMEEC advanced Rankin funds for his criminal defense.[1] Before doing so, however, it required Rankin to sign an "Affirmation and Undertaking" promising to repay those advanced fees if the proceedings revealed that he was not entitled to indemnification.[2]

Two days after Rankin was sentenced in the first case, the CMEEC board of directors met and voted to deny Rankin additional funds for his appeal.[3] It notified Rankin of this decision the same day.[4] Several days later, Rankin's counsel wrote to CMEEC to confirm that the organization would continue to advance Rankin funds for his defense in the second case.[5] The company advised Rankin that it did not intend to advance further fees for the second case.[6] In

---

[1] Doc. #1 at 5, 7, 10 (¶¶ 21, 28, 41)
[2] *Id.* at 12 (¶ 49); *see also id.* at 66 (Rankin's Exhibit G).
[3] *Id.* at 7 (¶ 28).
[4] *Id.* at 8 (¶ 30).
[5] *Id.* at 10 (¶ 42).
[6] *Id.* at 11 (¶ 43).

addition, CMEEC wrote a letter to Rankin demanding that he reimburse CMEEC for nearly $2.5 million in legal fees and expenses that it had paid him to date.[7]

Rankin soon filed this lawsuit against CMEEC.[8] In his complaint, he highlights various provisions of the CMEEC's bylaws.[9]

The first provision, Article IV.6(a), reads as follows:

> Each Member Utility Representative, Alternate Utility Representative, Municipal Representative, *and Officer of CMEEC* and persons occupying positions in the CMEEC organization pursuant to these Bylaws, *whether or not then in office*, and their personal representatives, *shall be indemnified and held harmless by CMEEC against all costs and expenses, including reasonable attorney fees and/or defense of suit, actually incurred by them in connection with the defense of any claim, action, suit, or proceeding in which they may be involved or to which they may be made a party by reason of their being or having been* such Member Utility Representative, Alternate Utility Representative, Municipal Representative or *Officer***,** except in relation to matters as to which they shall be *finally adjudged* in such action, suit, or proceeding to be liable for willful or wanton negligence or misconduct in the performance of duty.[10]

The second provision, Article IV.6(b), provides:

> *Each CMEEC employee* shall be indemnified for all costs and expenses, *including the right to receive in advance reasonable legal fees actually incurred by the employee in connection with the defense of any claim, action, suit, or proceeding in which they may be involved or to which they may be a party by reason of their being or having been such employee,* except in relation to matters as to which they shall be *finally adjudged* in such action, suit, or proceeding to be liable for willful or wanton negligence or misconduct in the performance of duty.[11]

Rankin also points to the following language from Article IV.1:

> *The Chief Executive Officer*, Chief Financial Officer, and General Counsel *shall be CMEEC employees,* and shall not be subject to the initial and regular elections and terms of office as provided for in Article IV, Section 2.[12]

---

[7] *Id.* at 12 (¶ 48).
[8] *Id.* at 1.
[9] *Id.* at 1-2 (¶ 3).
[10] *Id.* at 39 (emphasis added) (Rankin's Exhibit A).
[11] *Id* at 40 (emphasis added).
[12] Doc. #24 at 5 (emphasis added); *see also* Doc. #1 at 37.

He argues that these provisions of the bylaws entitle him to the continuing advancement of legal fees for both criminal cases.[13]

The complaint alleges claims for breach of contract, for bad faith breach of the implied covenant of good faith and fair dealing, and for violation of the Connecticut Unfair Trade Practices Act ("CUTPA").[14] It also asks for a declaration that the "Affirmation and Undertaking" he signed is unenforceable, or at least that CMEEC has no right to reimbursement unless and until Rankin has exhausted his appeals without success in the criminal cases.[15] CMEEC moves to dismiss the first three counts of Rankin's complaint.[16]

CMEEC has also impleaded National Union as a third-party defendant, complaining that National Union must advance legal defense fees to Rankin in accordance with an insurance policy issued by National Union to CMEEC.[17] It points to the following language from Coverage A of the Director and Officer provision of the insurance agreement:

> This policy *shall pay on behalf of each and every Individual Insured Loss* arising from a Claim first made against such Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of such Individual Insured, except when and to the extent that the Organization has indemnified the Individual Insured. The Insurer shall, in accordance with and subject to Clause 5 of this Coverage Section, advance Defense Costs of such Claim prior to its final disposition.[18]

CMEEC alleges claims against National Union for breach of contract, for bad faith breach of the implied covenant of good faith and fair dealing, and for declaratory judgment.[19]

National Union moves to dismiss CMEEC's third-party complaint on several grounds.

---

[13] Doc. #24 at 3-5.
[14] Doc. #1 at 17 (¶¶ 77-82).
[15] *Id.* at 18 (¶¶ 84, 86).
[16] Doc. #19-1 at 4.
[17] Doc. #22 at 2 (¶ 7), 6 (¶¶ 25, 26).
[18] Doc. #30-1 at 4 (emphasis added); *see also* Doc. #30-2 at 29 (National Union's Exhibit A).
[19] Doc. #22 at 7-11 (¶¶ 29-49).

First, it contends that CMEEC's suit against it violates a "no impleader" clause in the insurance contract.[20] Second, it argues that CMEEC lacks standing to pursue coverage under the policy that is intended to benefit Rankin.[21] For similar reasons, it asserts that the allegations in CMEEC's complaint fail to state any claim for relief.[22] In the alternative, National Union seeks to stay the case against it pending the outcome of Rankin's suit against CMEEC.[23]

**DISCUSSION**

The standard that governs a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is well established. Under Rule 12(b)(1), a complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject matter jurisdiction. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Similarly, under Rule 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022).[24]

### *Rankin's breach-of-contract claim against CMEEC*

Rankin's claim for breach of contract against CMEEC has two parts. First, he alleges that CMEEC violated its bylaws by refusing to advance him legal fees for his two criminal cases. Second, he alleges that CMEEC has violated its bylaws by demanding that Rankin reimburse CMEEC for fees already advanced.[25]  I will consider each claim in turn.

---

[20] Doc. #30-1 at 17.
[21] *Id.* at 13-17.
[22] *Id.* at 19.
[23] *Id.* at 23-28.
[24] Unless otherwise indicated, this ruling for ease of reading omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[25] CMEEC does not dispute that a violation of the bylaws would sound in breach of contract, which is true as a matter of Connecticut law. *See Anderson v. Cong. St. Condo. Ass'n, Inc.*, 2017 WL 7038454, at *2 (Conn. Super. Ct. 2017); *see also Owens v. New Britain Gen. Hosp.*, 229 Conn. 592, 607-08 (1993); *Gallagher v. Hamilton Standard*

Under Connecticut law, contract interpretation turns on the parties' intent. When there is definitive contract language, the parties' intent is a question of law. *See Old Colony Const., LLC v. Town of Southington,* 316 Conn. 202, 213 (2015). If the language is ambiguous, intent is a question of fact. *Ibid.* Because questions of fact generally cannot be resolved at the motion to dismiss stage, CMEEC can prevail only if the language of the contract unambiguously precludes the mandatory advancement of legal fees to Rankin. *See, e.g.*, *Prysmian Cables & Sys. USA LLC v. ADT Com. LLC*, 665 F. Supp. 3d 236, 244 (D. Conn. 2023); *Walker v. People's United Bank,* 305 F. Supp. 3d 365, 374 (D. Conn. 2018). And a contract is unambiguous only when "'its language is clear and conveys a definite and precise intent.'" *Nation-Bailey v. Bailey*, 316 Conn. 182, 192 (2015) (quoting *Parisi v. Parisi*, 315 Conn. 370, 383 (2015)). If a contract can reasonably be read more than one way, then its language is ambiguous. *Ibid.*

Here, I conclude the bylaw language is at least ambiguous, if not definitively in Rankin's favor. Article IV.1 made Rankin a CMEEC employee when he was CEO, and Article IV.6(b) provides CMEEC employees with the right to advancement of legal fees.[26] The natural conclusion is that Rankin is entitled to advancement. True, Article IV.6(a) only provides officers with indemnification—not advancement—but nothing in the bylaws suggests that Articles IV.6(a) and IV.6(b) are mutually exclusive.

CMEEC strains to avoid this obvious conclusion. It points out that the indictments charged Rankin by reason of his being or having been an officer of CMEEC, and that Rankin's complaint quotes this same language and declares that he "was an 'Officer' of CMEEC for the

---

*Fed. Credit Union*, 1994 WL 622006, at *1 (Conn. Super. Ct. 1994).
[26] *See* Doc. #1 at 37, 40. Moreover, the "Affirmation and Undertaking" that Rankin signed in order to obtain the advancement refers to his status as "an employee of CMEEC." *Id.* at 66.

purposes of CMEEC's Bylaws."[27] It thus concludes that only Article IV.6(a) applies to Rankin in this situation.

But the indictments do not purport to charge Rankin solely "by reason of his being or having been an Officer." Indeed, the charging documents refer to Rankin in his employee status as "CMEEC's chief executive officer."[28] CMEEC's CEO is both an officer and an employee. So to the extent that the indictment language could have bearing on how the bylaws should be interpreted—a tenuous proposition to begin with—the indictments do not help CMEEC.

Nor am I convinced that Rankin's own complaint meant solely to invoke his status as an officer and not an employee. It is true that the complaint notes Rankin was an "officer" of CMEEC without also directly asserting that he was an "employee" of CMEEC.[29] But the complaint also cites language from Article IV.6(b) as a "relevant part" of the bylaws, even highlighting the advancement language in bold.[30] Later on, when referring to CMEEC's "indemnification and advancement obligations," the complaint cites Article IV.6, rather than specifically subpart (a).[31] Although the complaint could have been more precisely drafted, it gives CMEEC adequate notice of the claim, including that Rankin seeks to vindicate his rights as an employee and not just as an officer.[32]

---

[27] *See* Doc. #34 at 3; *see also* Doc. #1 at 4 (¶¶ 16, 19-20).

[28] *See United States v. Rankin et al.*, 3:18-cr-00272-JAM, Doc. #1 at 4-5 (¶¶ 9, 13); *United States v. Rankin et al.*, 3:18-cr-00273-JAM, Doc. #1 at 4-5 (¶¶ 9, 11).

[29] *See* Doc. #1 at 4 (¶ 16).

[30] *See id.* at 1-2 (¶ 3).

[31] *See id.* at 8 (¶ 32).

[32] At oral argument CMEEC floated two additional arguments not set out in its motion to dismiss. First, CMEEC maintained that Rankin's conviction in the first case is a "final judgment" for the purposes of CMEEC's bylaws and notwithstanding that the case is still on appeal. Doc. #44 at 8-11. Second, CMEEC argued that Rankin's efforts to disclaim his "affirmation and undertaking" rendered him ineligible to receive further advancement of funds from CMEEC. *Id.* at 14-15. I decline to consider these arguments at this time for failure to state them in the motion to dismiss.

CMEEC has not demonstrated that the bylaw language clearly and unambiguously supports its reading. So I will deny CMEEC's motion to dismiss the first part of Rankin's breach-of-contract claim.[33]

On the other hand, I will grant CMEEC's motion to dismiss the second part of Rankin's breach-of-contract claim—namely, that CMEEC violated the bylaws by demanding that Rankin repay the fees already advanced. CMEEC argues that Rankin has suffered no damages from its demand letter. *See, e.g.*, *CCT Commc'ns, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 133 (2017) (claim for breach of contract requires damages).

I agree. Rankin does not claim to have made any payments to CMEEC, and it does not appear that he has been forced to defend against any legal actions made to enforce the demand letter. *See A & M Towing & Recovery, Inc. v. Stonington Ins. Co.*, 2012 WL 1195022, at *2 (D. Conn. 2012) (receiving a demand letter not sufficient to claim damages absent a lawsuit).

Rankin argues that CMEEC's demand letter is an anticipatory breach of contract. But it is hard to see what is "anticipatory" about CMEEC's conduct. An anticipatory breach requires "a definite and unequivocal manifestation of intent not to render the promised performance at the contractually agreed upon time." *Andy's Oil Service, Inc. v. Hobbs*, 125 Conn. App. 708, 722 (2010). There was no "agreed upon time" for CMEEC *not* to request repayment. Any sort of performance that may have been required was continuously due. Rankin therefore cannot rely on a theory of anticipatory breach to avoid the ordinary requirement of a breach-of-contract claim to show damages.

---

[33] Rankin's brief argues at length that CMEEC is judicially estopped from denying its obligation to advance him legal fees. *See* Doc. #24 at 6-10. But having already concluded that CMEEC's motion should be denied as to this breach-of-contract claim, I need not address the judicial estoppel question at this time.

In short, I will deny CMEEC's motion to dismiss as to Rankin's breach-of-contract claim with respect to the advancement of fees. But I will grant CMEEC's motion to dismiss as to Rankin's breach-of-contract claim with respect to CMEEC's demand letter for repayment.

### *Rankin's bad faith claim against CMEEC*

To prevail on his claim for a bad faith breach of the implied covenant of good faith and fair dealing, Rankin must show "(1) that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (2) that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and (3) that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith." *Mini Melts USA, Inc. v. Mini Melts, Inc.*, 2017 WL 4127900, at *6 (D. Conn. 2017); *see also Dorfman v. Smith*, 342 Conn. 582, 597 (2022).

The first two prongs of this test are easily met. As discussed above, Rankin has sufficiently pleaded a contract-type relationship with CMEEC and that CMEEC interfered with his right to advancement under the bylaws. In order to prevail on the third prong of this test, Rankin must demonstrate that CMEEC's actions were the product of a "interested or sinister motive" or otherwise of some "dishonest purpose." *Geysen v. Securitas Sec. Services USA, Inc.*, 322 Conn. 385, 399-400 (2016). A good faith misinterpretation of a contractual provision is not sufficient. *See D2E Holdings, LLC v. Corp. for Urb. Home Ownership of New Haven*, 212 Conn. App. 694, 703-704 (2022). Bad faith is typically a question of fact. *See Renaissance Mgmt. Co., Inc. v. Conn. Hous. Fin. Auth.,* 281 Conn. 227, 240 (2007).

Here, Rankin has alleged enough facts to support the last element of a bad faith claim. He alleges that CMEEC breached its known obligations because of "political, public, and financial

pressure."[34] Indeed, these cases have generated much adverse publicity for CMEEC. Moreover, Rankin points to CMEEC's statements in other litigation that it was paying Rankin's fees in accordance with or pursuant to its bylaws.[35] CMEEC's inconsistent positions are also suggestive of bad faith. Lastly, for the reasons discussed above, CMEEC's position appears highly suspect and unreasonable in light of the bylaws' language concerning the rights of employees to receive advancement of legal fees.[36]

In short, for this combination of reasons, Rankin has alleged enough for pleading purposes to sustain a claim for a bad faith breach of the implied covenant of good faith and fair dealing. Accordingly, I will deny CMEEC's motion to dismiss Rankin's bad faith claim.

### *Rankin's CUTPA claim against CMEEC*

The Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a–42-110q, creates a private right of action to recover damages for "[a]ny person who suffers any ascertainable loss of money or property ... as a result of the use or employment of a method, act or practice" that amounts to "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* §§ 42-110g(a), 42-110b(a). "[T]o prevail in a private cause of action under CUTPA, a plaintiff must establish that the defendant has (1) engaged in unfair methods of competition or unfair or deceptive acts or practices (2) in the conduct of any trade or commerce, (3) resulting in (4) an ascertainable loss of money or

---

[34] Doc. #1 at 15 (¶ 68); *see also id.* at 4, 14 (¶¶ 13, 57).

[35] *See, e.g.*, *CMEEC v. National Union Fire Insurance Co. of Pittsburgh, PA*, 3:19-cv-00839-JBA, Doc. #242-1 at 6 ("CMEEC agreed to, and did, advance payment to defense counsel for the reasonable attorney's fees and legal costs the insured individuals incurred in the defense of the Indictments, in accordance with CMEEC's Bylaws"); *see also* Doc. #47 (quoting similar statements by CMEEC made in briefing to the Second Circuit).

[36] CMEEC's motives in terminating payments to Rankin may also be viewed in light of the fact that CMEEC "has made almost no effort to recover trip expenses from other trip beneficiaries including some members of CMEEC's board of directors who took part in one or more trips and who even continue to serve as board members today." *United States v. Rankin*, 2023 WL 7403638, at *9 (D. Conn. 2023). "It is baffling why CMEEC has not sought reimbursement from other trip participants, especially those past and present fiduciaries who were well positioned to appreciate that the trips were an abusive and unlawful use of company funds." *Ibid.*

property, real or personal, by the plaintiff." *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189, 212 (2021).

"A plaintiff claiming a CUTPA violation must establish not only that a practice is unlawful or unfair, but also that it was undertaken in the conduct of trade or commerce." *Parcel Mgmt. Auditing & Consulting, Inc. v. Dooney & Bourke, Inc.*, 2015 WL 796851, at *8 (D. Conn. 2015); *see also Cenatiempo v. Bank of America, N.A.*, 333 Conn. 769, 789 (2019) (same). This generally means "the injured party must be a consumer, competitor, or other businessperson that is harmed by the defendant's commercial business practices.'" *Parcel Mgmt.*, 2015 WL 796851, at *8; *see also Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 88 (2019) (extending CUTPA standing to a party directly injured by conduct resulting from a defendant's unscrupulous and illegal advertising even in the absence of the party's business relationship with the defendant).

By contrast, a purely intra-corporate dispute is ordinarily outside the scope of activities that CUTPA subjects to regulation. *See Russell v. Russell*, 91 Conn. App. 619, 647 (2005). And an employment relationship itself is not "trade or commerce" within the meaning of CUTPA. *See Sempey v. Stamford Hospital*, 194 Conn. App. 505, 518 (2019); *Groth v. Grove Hill Med. Ctr., P.C.*, 2015 WL 4393020, at *10 (D. Conn. 2015).[37]

All these principles suggest that CUTPA was not meant for the kind of claim that Rankin brings here. Rankin is not a consumer or competitor of CMEEC, and he seeks to apply CUTPA as a former employee of CMEEC to an intra-corporate dispute about his rights to payments

---

[37] Rankin misplaces his reliance on *Fink v. Golenbock*, 238 Conn. 183, 213-14 (1996), and *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 492-94 (1995). The facts of both cases involved corporate insiders who engaged in predatory and anti-competitive business conduct, thus satisfying CUTPA's "trade and commerce" requirement.

under the company's bylaws. Because Rankin has not alleged plausible grounds for relief under CUTPA, I will grant CMEEC's motion to dismiss the CUTPA claim.

### The "no impleader" clause in the CMMEC-National Union contract

Turning now to National Union's arguments for dismissing CMEEC's third-party claims, National Union argues that CMEEC's claims against it are barred by its insurance contract with CMEEC that states that CMEEC as the insured may not implead National Union as the insurer in any legal actions.[38] But CMEEC argues that this "no impleader" clause is unenforceable under both state and federal law.

I agree with CMEEC. In *Schurgast v. Schumann*, 156 Conn. 471 (1968), the Connecticut Supreme Court refused to give effect to a no-impleader contractual clause at the expense of a Connecticut statute (Conn. Gen. Stat. § 52-102a) that allows impleading and in view of the object of allowing impleading "to facilitate litigation, to save costs, to bring all of the litigants into one proceeding, and to dispose of an entire matter without the expense of many suits and many trials." *Id.* at 485. In so ruling, the Connecticut Supreme Court relied on federal court rulings that have similarly declined to enforce no-impleader clauses as inconsistent with Rule 14 of the Federal Rules of Civil Procedure, which permits impleading. *Ibid.*

As the Seventh Circuit has observed, a no-impleader clause in an insurance contract is "directly opposed to the policies underlying Rule 14," because "[t]hat rule is designed to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted," and because "[t]he rule guarantees consistent

---

[38] Doc. #30-1 at 6-7 (quoting the insurance policy: "No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or their legal representatives.").

.

results, saves the time and cost involved in the needless repetition of evidence at a subsequent trial, and prevents the defendant in the original action from being handicapped by the time which may elapse between a judgment against him and a judgment in his favor against the insurance company." *Colton v. Swain*, 527 F.2d 296, 299 (7th Cir. 1975); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1449 (3d ed. and April 2023 update) (discussing how federal courts have declined to give effect to no-impleader clauses in insurance contracts). I am persuaded by both the state and federal court rulings.

National Union further argues that CMEEC's third-party complaint is not a proper impleader action, because CMEEC's claims against National Union do not depend on the outcome of Rankin's claims against CMEEC. But CMEEC asserts that it is incurring expenses it would have avoided had National Union fulfilled its obligation to advance Rankin fees, and those expenses will obviously be larger if Rankin ultimately succeeds against CMEEC. Accordingly, National Union's liability to CMEEC quite clearly depends on the outcome of Rankin's suit. *See* Fed. R. Civ. P. 14(a) (allowing third-party complaint against "a nonparty who is or may be liable to it for all or part of the claim against it").

In short, the "no impleader" clause is not enforceable, and CMEEC has properly impleaded National Union as a third-party defendant in this action. Accordingly, I will deny National Union's motion to dismiss insofar as it is based on the "no impleader" clause or on the argument that this is not a proper impleader action.

   ***CMEEC's standing***

National Union argues that CMEEC lacks standing to bring its claims for breach of contract and declaratory judgment.[39] According to National Union, only Rankin has the contractual right to demand coverage under Coverage A of its policy issued to CMEEC.

When a federal court exercises diversity jurisdiction, "a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action." *See, e.g.*, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005); *Yankovich v. Applus Technologies, Inc.*, 621 F. Supp. 3d 269, 273 n.2 (D. Conn. 2022). At oral argument, National Union clarified that it challenges CMEEC's standing only as a matter of state contract law and not for purposes of Article III.[40] Because standing under Article III requires a plaintiff to show an injury in fact, *see Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023), CMEEC's position amounts to an acknowledgement that CMEEC has been injured by National Union's failure to pay benefits for Rankin under the policy.

I cannot otherwise agree that CMEEC lacks state law contractual standing. It is CMEEC—not Rankin—who paid for the insurance policy and who is a party to the insurance contract. It would be beyond odd if state law were construed to mean that CMEEC could not enforce all the terms of a contract that it signed and paid for.

Connecticut courts have understood the rule of standing to preclude breach-of-contract claims by plaintiffs who are "neither a party to a contract nor a contemplated beneficiary thereof." *Bernblum v. Grove Collaborative, LLC*, 211 Conn. App. 742, 757 (2022). But it is quite

---

[39] Doc. #41 at 3; *see also* Doc. #30-1 at 13.
[40] Doc. #44 at 42.

a different proposition to say that a party signatory to a contract has no standing to enforce a provision of the contract that is intended to benefit a third party.

To the contrary, it is hornbook law that "[a] promise in a contract creates a duty in the promisor to the promisee to perform the promise even though he also has a similar duty to an intended beneficiary." RESTATEMENT (SECOND) OF CONTRACTS § 305(1). And in discussing "fundamental principles of contract law," the Second Circuit has observed that "the rule that allows a third-party beneficiary to sue in order to preserve the promised benefit to itself does not disable the party to which the contractual commitment was made from suing to enforce the commitment made to it." *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 747 (2d Cir. 2014). In other words, "[d]espite the apparent difficulties caused by the promisor being potentially liable to two parties, most courts have found it simpler to allow both the promisee and the beneficiary to sue the promisor to enforce the third party beneficiary contract." 13 WILLISTON ON CONTRACTS 4th § 37:55 (4th ed.); *see also Wedtech Corp. v. Fed. Ins. Co.*, 740 F. Supp. 214, 219 (S.D.N.Y. 1990) (Sand, J.) (company had contractual standing to sue its insurance company to enforce third-party beneficiary provisions for coverage of company employees under director-and-officer insurance policy).[41]

Nor is this a case where CMEEC suffers no injury for standing purposes because of National Union's failure to pay Rankin. As discussed above, there are strong grounds to conclude that CMEEC itself is obliged by its bylaws to pay for Rankin's fees, so CMEEC will likely be on the hook to Rankin if National Union does not pay. "Where the promised

---

[41] National Union misplaces its reliance on *City of New Haven v. Ins. Co. of Pennsylvania*, 2012 WL 774987 (D. Conn. 2012). That decision did not grapple with the principles discussed above or cite any decisions interpreting Connecticut law to divest the right of an insurance policy holder to sue an insurance company to enforce policy provisions intended to benefit a third party. Indeed, the court emphasized that the plaintiff "points to no comparable legal authority authorizing it [as the insurance policy holder] to assert such claims on [the third-party beneficiary employees'] behalf." *Id.* at *4.

performance will satisfy an obligation of the promisee to pay money to the beneficiary, the promisee may suffer substantial damages as a result of breach," and "[h]e is entitled to recover such damages so long as there is no conflict with rights of the beneficiary or the promisor." RESTATEMENT (SECOND) OF CONTRACTS § 307 cmt c.

The conclusion that CMEEC has standing also answers the question of whether it states a claim for breach of contract or declaratory judgment. National Union's argument for dismissal of these claims is a rehash of its standing argument.[42] Accordingly, I will deny National Union's motion to dismiss for lack of contractual standing, as well as National Union's motion to dismiss CMEEC's breach of contract and declaratory judgment counts.

### CMEEC's bad faith claim

As noted above, to state a claim for a bad faith breach of the implied covenant of good faith and fair dealing, a plaintiff must show "(1) that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (2) that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and (3) that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith." *Mini Melts*, 2017 WL 4127900, at *6.

CMEEC has plausibly alleged each of these elements. CMEEC and National Union had a contract, and CMEEC benefited from that contract through National Union's obligation to advance fees to CMEEC officers. National Union has allegedly refused to carry out that obligation, and CMEEC has alleged facts that, if true, would make that refusal in bad faith.

---

[42] *Compare* Doc. #30 at 13-17, *and* Doc. #41 at 2-5, *with* Doc. #30 at 19, *and* Doc. #41 at 8-10.

To fulfill this last requirement, CMEEC asserts that National Union refused to advance fees to CMEEC officers like Rankin as part of a scheme to require CMEEC to shoulder costs that should have been passed on to National Union.[43] It argues that it has been forced to act as a middle man—that is, advancing fees to Rankin, then applying to National Union for reimbursement through a different provision of the insurance contract—and that National Union allegedly saves money by "arbitrarily … deny[ing] payment" of those reimbursements to CMEEC.[44]

Importantly, National Union does not seek to counter CMEEC's interpretation of the contract with one of its own. It deems CMEEC's allegations "indicative only of a contract dispute," but it does not explain how a correct reading of the contract would exonerate National Union of an obligation to advance fees to Rankin. It contends that it only needs an "arguably justifiable reason" for its actions in order to avoid a bad faith claim, citing *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169 (D. Conn. 2005). But it overlooks that the defendant in *McCulloch* offered a reason for its actions—after an extensive investigation, it denied the plaintiff disability benefits under a contract because it concluded she no longer had a disability. *Id.* at 174-176. By contrast, National Union provides no reading of its contract with CMEEC that would excuse it from advancing fees to Rankin.

In the end, CMEEC has alleged that National Union is engaged in a scheme to reduce its liability without good faith regard to its contractual obligations. The insurer has allegedly forced CMEEC to serve as a middleman, not because of its reasonable disagreement about the meaning of its contract with CMEEC, but in order to save money. Accordingly, I will deny National Union's motion to dismiss CMEEC's bad faith claim.

---

[43] Doc. #22 at 10 (¶ 47(c)).
[44] *Ibid.*

*National Union's motion for a stay*

National Union also moves in the alternative for a stay of the litigation of CMEEC's third-party complaint pending the outcome of Rankin's suit against CMEEC.[45] The decision of whether to grant a stay "calls on a district court's 'studied judgment,' requiring the court to examine 'the particular facts before it' and determine 'the extent to which ... a stay would work a hardship, inequity, or injustice to a party, the public or the court.'" *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012)). In determining whether to issue a stay, courts ordinarily consider "(1) the private interests of the plaintiff in proceeding expeditiously balanced against the prejudice to him if the litigation is delayed, (2) the private interests of and burden on the defendants, (3) the interests of the courts, (4) the interests of non-parties, and (5) the public interest." *Tyus v. Semple*, 2020 WL 1083603, at *2 (D. Conn. 2020) (citing *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.,* 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009)).

I have considered all these factors and conclude that they weigh decisively in favor of allowing CMEEC's claims against National Union to proceed without delay. In particular, if CMEEC's claims against National Union have merit, there would be harm to both CMEEC and Rankin if the adjudication of those claims is further delayed by a whole new round of litigation. National Union has not adequately established that it will be unfairly prejudiced by a speedier resolution for a dispute that has already been percolating for several years. Accordingly, I will deny the motion to stay CMEEC's claims against National Union.

---

[45] Doc. #30-1 at 23.

### CONCLUSION

For the reasons discussed above, the Court GRANTS in part and DENIES in part CMEEC's motion to dismiss (Doc. #19). The Court GRANTS the motion as to Rankin's second breach-of-contract claim (the demand letter for repayment) and the CUTPA claim. The Court DENIES the motion as to Rankin's first breach-of-contract claim (failure to advance fees) and his claim for bad faith breach of the implied covenant of good faith and fair dealing.

The Court DENIES National Union's motion to dismiss and motion to stay (Doc. #30).

It is so ordered.

Dated at New Haven this 30th day of March 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge