# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DREW RANKIN,<br>*Plaintiff*,<br><br>v.<br><br>CONNECTICUT MUNICIPAL ELECTRIC<br>ENERGY COOPERATIVE,<br>*Defendant.* | No. 3:23-cv-00805 (VAB) |

## RULING AND ORDER ON THE MOTION FOR PRELIMINARY INJUNCTION AND THE MOTION TO DISMISS

Mr. Drew Rankin ("Plaintiff") has moved for a preliminary injunction against the Connecticut Municipal Electric Energy Cooperative ("CMEEC" or "Defendant"), requiring it to advance him legal fees in a criminal action resulting from his alleged conduct while serving as CMEEC's Chief Executive Officer ("CEO"). CMEEC has opposed Mr. Rankin's motion.

Mr. Rankin has active litigation pending against CMEEC, in which he has plausibly alleged breach-of-contract and bad faith breach of the implied covenant of good faith and fair dealing in connection with its alleged refusal to advance him legal fees to defend against two criminal actions. *Rankin v. Conn. Mun. Elec. Energy Coop.*, No. 23-cv-00805 (JAM), 2024 WL 1344790 (D. Conn. March 30, 2024).

CMEEC has filed Counterclaims against Mr. Rankin, seeking declaratory relief from this Court, as well as damages for breach of contract, bad faith breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraudulent inducement.

Mr. Rankin has filed a motion to dismiss all of CMEEC's Counterclaims except its unjust enrichment claim, and CMEEC has opposed Mr. Rankin's motion.

For the following reasons, the motion for a preliminary injunction is **DENIED** and the motion to dismiss is **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[1]

CMEEC is a non-profit, state-chartered cooperative of municipal electric utilities of various cities and towns in Connecticut, with its principal place of business in Norfolk, Connecticut. Countercl. and Answer ¶ 1, ECF No. 57 (April 15, 2024) (hereinafter "Countercl."). Mr. Rankin is an individual who allegedly currently resides in Kentucky and is a former employee and CEO of CMEEC; he served in that role from January 1, 2011, to May 9, 2019. *Id.* ¶¶ 2, 4.

CMEEC is governed by a board of directors comprised of representatives from each municipal electric utility, or their relevant municipality that is a member of CMEEC ("Board" or "the Board"). *Id.* ¶ 3. Article IV, § 6(a) of CMEEC's bylaws allegedly require it to, under certain conditions, indemnify and hold harmless officers who face legal difficulties in connection with their roles as officers "only if CMEEC is advised in writing by its counsel that in their opinion the person indemnified did not commit [] willful or wanton negligence or misconduct." Opp'n MTD 7, ECF No. 78 (June 11, 2024).  Article IV, § 6(b) of CMEEC's bylaws allegedly require it to indemnify any employee for legal fees, "including the right to receive in advance reasonable legal fees actually incurred by the employee," unless the employee is "finally adjudged" to have engaged in misconduct. Prelim. Injunct. at 2, ECF No. 55-1 (April 8, 2024) (hereinafter "P.I.").

During Mr. Rankin's tenure as CEO, the United States Attorney's Office for the District

---

[1] The following is drawn from CMEEC's Counterclaims, Mr. Rankin's motion for a preliminary injunction, court filings in other relevant federal litigation, and the parties' supplement briefing on intervening events that have impacted this litigation.

of Connecticut initiated a grand jury investigation beginning in 2016 and continuing through October 2018, allegedly relating to, *inter alia*, accountings of payments and reimbursements to the Board, accountings of federal grants to CMEEC, accounting of the sources and funds used to pay Board members, and accountings related to CMEEC's marginal fund. Countercl. ¶ 5.

In August 2018, while the grand jury investigation was ongoing, Mr. Rankin, who was still serving as CEO, allegedly entered into an Affirmation and Undertaking ("Affirmation") concerning the payment of legal fees, expenses, and other costs that CMEEC advanced or reimbursed on his behalf. *Id.* ¶ 6. At that time, Mr. Rankin still allegedly owed a fiduciary duty to CMEEC. *Id.* The Affirmation allegedly stated:

> AFFIRMATION AND UNDERTAKING
>
> I, Drew Rankin, declare that I am currently an employee of the Connecticut Municipal Electric Energy Cooperative ("CMEEC"). In my actions undertaken as an employee of CMEEC, I acted in good faith and in a manner that I reasonably believed to be in, or not opposed to, the best interests of CMEEC, and I had a reasonable belief that my conduct was lawful.
>
> If it is ultimately determined in accordance with the by-laws of CMEEC, resolutions of the CMEEC Board of Directors and applicable state law that I am not entitled to indemnification, I will promptly repay CMEEC on request for the amounts of legal fees, expenses, and other costs that CMEEC has advanced or reimbursed on my behalf for legal fees and expenses.

> *Id.*

On November 6, 2018, the United States Government allegedly filed two indictments against Mr. Rankin in two criminal proceedings, *United States v. Rankin, et. al.*, 3:18-cr-00272 ("the '272 Action), and *United States v. Rankin et. al.*, 3:18-cr-00273 ("the '273 Action"), concerning activities that, allegedly according to the indictments, involved Mr. Rankin in his capacity as a Member Representative or Officer of CMEEC. *Id.* ¶ 7.

Mr. Rankin allegedly defended against the allegations in the '272 Action and was

allegedly represented by counsel throughout the investigation and defense of the '272 Action. *Id.* ¶ 8. A jury convicted Mr. Rankin of one count of the '272 Action indictment in December 2021. *Id.* Based on Mr. Rankin's representations and contingent on the Affirmation, CMEEC allegedly advanced and paid legal fees and expenses on his behalf during the investigation and for the defense of the '272 Action after the return of indictments, and through the entry of final judgment in the '272 Action in the United States District Court for the District of Connecticut after Mr. Rankin's conviction, sentencing, and entry of an order of restitution against Mr. Rankin. *Id.* ¶ 9; *see also United States v. Rankin et al*, 3:18-cr-00272, Order of Restitution re Drew Rankin, ECF No. 743 (Nov. 14, 2023); *United States v. Rankin et al*, 3:18-cr-00272, J. as to Drew Rankin, ECF No. 690 (May 24, 2023).

Based on Mr. Rankin's representations and contingent on the Affirmation, CMEEC also allegedly advanced and paid legal fees and expenses on Mr. Rankin's behalf during the investigation and for the defense of the '273 Action after the return of the indictments, and continued to do so through the entry of final judgment in the '272 Action in the United States District Court for the District of Connecticut after Mr. Rankin's conviction, sentencing, and entry of an order of restitution against Mr. Rankin. Countercl. ¶ 10. The '273 Action had been stayed at the request of Mr. Rankin under Court orders entered on June 2, 2023, and January 19, 2024. *Id.*; *see also United States v. Rankin et al*, 3:18-cr-00273, Initial Pre-Tr. Scheduling Order, ECF No. 147 (June 2, 2023) ("The Court for the time being stays the setting of a trial date pending resolution of the defendants substantive motions and the pending appeals of the defendants in USA v. Rankin, 18cr272."); *United States v. Rankin et al*, 3:18-cr-00273, Order, ECF No. 16 (Jan. 19, 2024) ("The Court . . . STAYS all briefing of substantive motions for both defendants in this case pending the Court of Appeals' determination of the appeal in *United States v. Rankin*

*et al.,* 18cr272."). The Court continued the stay on November 6, 2024. *United States v. Rankin et al*, 3:18-cr-00273, Order Continuing Stay, ECF No. 175 (Nov. 6, 2024) ("[T]he Court STAYS this action pending the parties' submission of another joint status report within the next 30 days.").

Following Mr. Rankin's conviction by jury trial in the '272 Action, the United States District Court for the District of Connecticut entered a judgment of conviction and imposed a sentence in the '272 Action on May 16, 2023. Countercl. ¶ 11. Following the entry of judgment against Mr. Rankin in the '272 Action, CMEEC allegedly requested, in June 2023, that he promptly repay all amounts that CMEEC advanced to him or his attorney on his behalf in the '272 Action. *Id.* ¶ 12. Mr. Rankin has allegedly not repaid any amounts CMEEC advanced or paid to him or on his behalf in defense of the '272 Action. *Id.* ¶ 14.

In response to CMEEC's demand for repayment, Mr. Rankin allegedly claimed that he received no consideration when he signed the Affirmation in August 2018, and he further claimed that the Affirmation was not an enforceable contract. *Id.* ¶ 15.

In November 2023, Mr. Rankin and a co-defendant appealed the judgment and restitution order in the '272 Action. *United States v. Rankin et al*, 3:18-cr-00272, Notice of Appeal by Drew Rankin, ECF No. 750 (Nov. 21, 2023). On September 6, 2024, the Second Circuit affirmed the judgment of the District Court. *See generally United States v. Sullivan*, 118 F.4th 170 (2d Cir. 2024).

During oral argument before the Honorable Jeffrey Alker Meyer, U.S. District Judge, on October 1, 2024, counsel for Mr. Rankin clarified that he is no longer seeking injunctive relief or reimbursement as to advancement of payments for legal fees incurred in the '272 Action and is only seeking injunctive relief to receive payments for the '273 Action. *Rankin v. Conn. Mun.*

*Elec. Energy Coop.*, No. 23-cv-00805, Hr'g Tr., ECF No. 89 at 4–5 (Oct. 15, 2024).

Mr. Rankin alleges that, since May 18, 2023, CMEEC has refused to pay invoices to his lawyers—Izard, Kindall & Raabe, LLP-CT ("IKR")—totaling $202,865.49 for legal fees associated to his appeal of the '272 Action, his defense of CMEEC's mandamus petition in the '272 Action, and his defense of the '273 Action. Aff. Drew Rankin, ECF No. 55-1 (April 8, 2024). In November of 2023, Mr. Rankin allegedly paid IKR $375,000. Rankin Dep., ECF No. 95-1 at 15–16 (Jan. 6, 2025).

As of May 30, 2024, after oral argument had taken place in his appeal of the '272 Action, Mr. Rankin alleged that CMEEC owed him the following amounts for the three types of legal fees identified in his preliminary injunction: $19,877.50 for defense of the '273 Action in the District Court, $169,265.31 for appealing the '272 Action's judgment to the Second Circuit, and $39,095.00 for defense of his mandamus appeal of the '272 Action to the Second Circuit, for a total of $228,237.81. Def.'s Ex. C, Pl.'s Initial Disclosures, ECF No. 95-1 at 73 (Jan. 6, 2025). CMEEC alleges that Mr. Rankin asserted in his damages analysis that his unpaid legal expenses related to the '273 Action increased by $955.00 between May 30, 2024, and October 17, 2024. Suppl. Opp'n P.I., ECF No. 95 at 3 (Jan. 6, 2025).

On December 6, 2024, Mr. Rankin and the Government proposed that Mr. Rankin be permitted to enter a pre-trial diversion program rather than proceed to trial on the '273 Action. *See USA v. Rankin et al*, No. 3:18-cr-00273-VDO, Joint Mot. to Continue and for Auth. Of Pre-Trial Diversion Program, ECF 183 (Dec. 6, 2024). Judge Meyer adopted the parties proposed order on December 9, 2024. Order, ECF No. 193 (Dec. 9, 2024). Jury selection in the '273 Action is currently stayed for eighteen months while Mr. Rankin completes the program. *Id.* If Mr. Rankin successfully completes the program, the Government intends to dismiss the charges

in the 273 'Action. *USA v. Rankin et al*, No. 3:18-cr-00273-VDO, Order, ECF. 198 (Feb. 12, 2025) ("The parties' joint motions for authorization of pretrial diversion programs expresses the intent of the United States to 'move to dismiss the pending charges in this case' against each defendant if they successfully complete the diversion program." (citations omitted)).

### B. Procedural History

On June 21, 2023, Mr. Rankin filed a Complaint against CMEEC. Compl.

On August 2, 2023, CMEEC filed a motion to dismiss Mr. Rankin's Complaint, CMEEC Mot. to Dismiss, ECF No. 19, and a memorandum in support of their motion. ECF No. 19-1, CMEEC Mem. (Aug. 2, 2023).

On August 16, 2023, CMEEC filed a Third-Party Complaint against National Union Fire Insurance Company of Pittsburg, PA ("National Union"). Third Party Compl., ECF No. 22 (Aug. 16, 2023).

On September 13, 2023, Mr. Rankin filed a memorandum in opposition to the motion to dismiss. Pl.'s Mem. in Opp'n re CMEEC Mot. to Dismiss, ECF No. 24 (Sept. 13, 2023).

On September 20, 2023, National Union filed a motion to dismiss or stay the third-party complaint. Nat'l Union Mot. to Dismiss, ECF No. 30 (Sept. 20, 2023).

On October 4, 2023, CMEEC filed a reply to Mr. Rankin's memorandum in opposition to CMEEC's motion to dismiss. CMEEC Reply to Rankin Opp'n, ECF No. 34 (Oct. 4, 2023).

On October 11, 2023, CMEEC filed a memorandum in opposition to National Union's motion to dismiss or stay the third-party complaint. CMEEC Mem. in Opp'n to Mot. to Dismiss Third Party Compl., ECF No. 36 (Oct. 11, 20223).

On November 1, 2023, National Union filed a reply to CMEEC's memorandum in opposition to its motion to dismiss the third-party complaint. Nat'l Union Reply to CMEEC

Opp'n, ECF No. 41 (Nov. 1, 2023).

On December 11, 2023, the Judge Meyer held oral argument taking under advisement CMEEC's motion to dismiss Mr. Rankin's complaint, CMEEC Mot. to Dismiss, and National Union's motion to dismiss CMEEC's third-party complaint. *See* Minute Entry, ECF No. 43 (Dec. 11, 2023).

On March 7, 2024, Judge Meyer granted Mr. Rankin leave to file a sur-reply memorandum in Opposition to CMEEC's motion to dismiss. Order, ECF No. 52 (March 7, 2023).

On March 8, 2024, Mr. Rankin filed a sur-reply memorandum in opposition to CMEEC's motion to dismiss. Sur-reply to CMEEC Mot. to Dismiss, ECF No. 53 (March 8, 2024).

On March 30, 2024, Judge Meyer granted in part and denied in part CMEEC's motion to dismiss. *Rankin v. Conn. Mun. Elec. Energy Coop.*, No. 23-cv-00805 (JAM), 2024 WL 1344790 (D. Conn. March 30, 2024). Judge Meyer granted CMEEC's motion as to Mr. Rankin's breach-of-contract claim involving the demand letter for repayment and his claim under CUPTA. *Id.* at *10. Judge Meyer denied CMEEC's motion to dismiss as to Mr. Rankin's breach of contract claim regarding CMEEC's failure to advance fees and his claim for bad faith breach of implied covenant of good faith and fair dealing. *Id.* Third, Judge Meyer denied National Union's motion to dismiss and motion to stay. *Id.*

On April 8, 2024, Mr. Rankin filed a motion for a preliminary injunction, moving for CMEEC to resume advancing his legal fees and expenses. P.I.

On April 15, 2024, CMEEC filed an Answer to Mr. Rankin's Complaint and Counterclaims against Mr. Rankin. Countercl. CMEEC seeks a declaratory judgment that the Affirmation and Undertaking the plaintiff executed is an enforceable contract and damages and

costs resulting from alleged breach of contract, unjust enrichment, bad faith, and fraudulent inducement by Mr. Rankin as to his alleged conduct regarding the Affirmation and Undertaking. Countercl. 24.

On April 29, 2024, CMEEC filed an opposition to Mr. Rankin's motion for a preliminary injunction. Opp'n re Mot. for Prelim. Injunct., ECF No. 61 (April 29, 2024) (hereinafter "Opp'n P.I.").

On May 6, 2024, Mr. Rankin filed a motion to dismiss CMEEC's Counterclaims. Mot. to Dismiss CMEEC Countercl., ECF No. 66 (May 6, 2024) (hereinafter "MTD").

On May 6, 2024, Mr. Rankin filed his Answer to CMEEC's Counterclaims. Rankin Answer, ECF No. 67 (May 6, 2024).

May 13, 2024, Mr. Rankin filed a reply to CMEEC's response to his motion for preliminary injunction. Reply to Opp'n P.I., ECF No. 68 (May 13, 2024).

On June 11, 2024, CMEEC filed its memorandum in opposition to Mr. Rankin's motion to dismiss its Counterclaims. Opp'n MTD.

On June 25, 2024, Mr. Rankin filed a reply to CMEEC's opposition to his motion to dismiss its Counterclaims. Reply to Opp'n MTD, ECF No. 79 (June 25, 2024).

On June 27, 2024, Judge Meyer denied National Union's motion for reconsideration, *see* Mot. for Recons., ECF No. 56 (April 8, 2024). Order Denying Mot. for Recons., ECF No. 80 (June 27, 2024).

On October 1, 2024, Judge Meyer held oral argument, taking under advisement Mr. Rankin's motion for preliminary injunction, P.I., and Mr. Rankin's motion to dismiss, MTD, along with CMEEC's responses to those motions. *See* Minute Entry, ECF No. 88 (Oct. 1, 2024).

On December 19, 2024, the Court issued a supplemental briefing order, stating, "[i]t

appears from the record of criminal proceedings involving Mr. Rankin that he may no longer be accruing and in need of criminal defense representation services or in need of such level of services that would suffice to sustain a showing of irreparable harm." Suppl. Br. Order, ECF No. 93 (Dec. 19, 2024).

On January 6, 2025, Mr. Rankin filed a supplemental memorandum in support of his motion for preliminary injunction. Rankin Suppl. P.I., ECF No. 94 (Jan. 6, 2025). On that same date, CMEEC filed a supplemental memorandum in opposition to the motion for preliminary injunction. Suppl. Opp'n P.I., ECF No. 95 (Jan. 6, 2025).

On January 13, 2025, Mr. Rankin filed a response to CMEEC's supplemental memorandum. Rankin Resp. to Suppl. Mem., ECF No. 105 (Jan. 13, 2025).

On January 14, 2025, CMEEC filed a response to Mr. Rankin's supplemental memorandum. CMEEC Resp. to Suppl. Mem., ECF No. 106 (Jan. 14. 2025).

On January 17, 2025, following the unfortunate passing of Judge Meyer, the case and all outstanding motions were transferred to this Court. Order of Transfer, ECF No. 108 (Jan. 17, 2025).

## II.   STANDARD OF REVIEW

### A.  Preliminary Injunction

Preliminary injunctive relief is an extraordinary remedy and not a matter of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction under Federal Rule of Civil Procedure 65, a movant "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Winter*, 555

U.S. at 20); *see also Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Furthermore, a "district court has wide discretion in determining whether to grant a preliminary injunction." *Moore*, 409 F.3d at 511. "'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948 (2d ed. 1995) (citations omitted)).

"The Second Circuit has, further, differentiated between injunctions that propose to alter the status quo (mandatory injunctions) and those that merely seek to maintain it (prohibitory injunctions)." *XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F.Supp.2d 263, 271 (S.D.N.Y. 2012). Mandatory injunctions may "'issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Id.* (quoting *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011)). A prohibitory injunction, in contrast, may be issued on a showing of "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party question the preliminary relief.'" *Id.* (quoting *Citigroup Global Mkts., Inc., v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2018)).

### B.  Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo

working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession

or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Mr. Rankin filed suit against CMEEC, alleging breach of contract under CMEEC's bylaws for its failure to advance him legal fees, breach of contract under CMEEC's bylaws because it demanded the Mr. Rankin reimburse it for fees it had already advanced, bad faith breach of the implied covenant of good faith and fair dealing, and a violation of the Connecticut Unfair Trade Practices Act ("CUPTA"). *Rankin*, 2025 WL 1344790, at * 3, 5, 6.

Judge Meyer dismissed Mr. Rankin's claim for breach of contract regarding CMEEC's demand for repaying and his claim under CUPTA. *Id.* at *10. His claim for breach of contract regarding CMEEC's refusal to advance him legal fees and for breach of the implied covenant of good faith and fair dealing were allowed to continue. *Id.* Mr. Rankin has moved for a preliminary injunction against CMEEC, demanding that it advance him fees for legal fees incurred in the '273 Action.[2]

Meanwhile, CMEEC has filed five Counterclaims against Mr. Rankin. It asks the Court to declare that the Affirmation is an enforceable contract and claims that Mr. Rankin breached that contract, unjustly enriched himself through that contract, breached the covenant of good faith and fair dealing, and fraudulently induced CMEEC to advance his legal fees through his signing of the Affirmation. Countcl. 18–24. Mr. Rankin has moved to dismiss all claims besides the unjust enrichment claim.[3]

---

[2] As this Court explained, Mr. Rankin initially moved for injunctive relief seeking resumption of advancement for both the '272 and '273 Actions but is now only seeking relief for the '273 Action. *See supra* 5–6.

[3] Despite not moving to dismiss the unjust enrichment claim, Mr. Rankin maintains "that the unjust enrichment claim is meritless due to the controlling bylaws." MTD 20 n.2.

This Court will address both motions and each claim in turn.

### A. Motion for Preliminary Injunction

Preliminary injunctive relief is an extraordinary remedy and not a matter of right. *Winter*, 555 U.S. at 24. To be entitled to the extraordinary remedy, *see id.*, the movant must establish that he will experience irreparable harm if not granted an injunction, that he has a likelihood to succeed on the merits of the claims, that the balance of equities tip in the movant's favor, and that an injunction would serve the public interest. *See Walsh*, 733 F.3d at 486.

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction," *Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999) (quoting *Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)), and "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered. *Id.* (quoting *Reuters Ltd. V. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1995)).

As a result, the Court will first address whether Mr. Rankin is likely to suffer irreparable harm without a preliminary injunction.

#### 1. Irreparable Harm

"To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual an imminent,' and one that cannot be remedied 'if a court waits until the end of a trial to resolve the harm.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citations omitted)); *see also Winter,* 555 U.S. at 22 ("[The Supreme Court's] frequently reiterated standard requires plaintiffs seeking preliminary injunctions to demonstrate that irreparable injury is *likely*

in the absence of an injunction." (collecting cases)). Furthermore, "[t]he basic requirements to obtain injunctive relief have always been a showing of irreparable harm and the inadequacy of legal remedies." *Nechis v. Oxford Health Plans, Inc.* 421 F.3d 96, 103 (2d Cir. 2005) (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999)).

Mr. Rankin claims that he will be irreparably harmed if not advanced the fees for the '273 Action because his law firm cannot represent him in the '273 Action if it is not going to be paid and he does not have the income or assets to pay the outstanding legal fees in that case. *See* P.I. 7. He also claims that he would be irreparably injured if his counsel from IKR were taken off the case and he were to be appointed new counsel, as IKR has represented him in the '272 and '273 Actions and related civil matters for six years and has in-depth knowledge of the cases. *See* Hr'g Tr. 7–8. Finally, he claims that the fact that his future legal fees may be mitigated by participating in the pre-trial diversion problem "does not mitigate his irreparable harm." Rankin Suppl. P.I. 1.

### i. Initial Briefing

In his initial motion for a preliminary injunction, Mr. Rankin argues that there is "ample law that the denial of a right to advancement constituted irreparable harm." P.I. 15 (citing *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1225 (10th Cir. 2009); *Roller Bearing Indus. v. Paul*, No. 3:05-CV-508-S, 2010 WL 1257715, *6 (W.D. Ky. 2010); *In re Worldcom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005); *Tafeen v. Homestore, Inc.*, No. Civ. A. 023-N, 2005 WL 1314782, *3 (Del. Ch. May 26, 2005), *aff'd*, 886 A.2d 502 (Del. 2005); *Great Am. Ins. Co. v. Gross,* No. 05–cv–159, 2005 WL 1048752, at *4 (E.D. Va. May 3, 2005); *In re Adelphia Communications Corp.,* No. 02–41729, 2004 WL 2186582, at *6–7, 10 (S.D.N.Y. Sept. 2004);

*In re CyberMedica, Inc.,* 280 B.R. 12, 18–19 (Bankr. Ct. D. Mass. 2002); *Emons Indus., Inc. v. Liberty Mutual Ins. Co.,* 749 F. Supp. 1289, 1293 (S.D.N.Y. 1990)).

He also argues that his case is similar to *XL Specialty Insurance Company v. Level Global Investors, L.P.*, 874 F. Supp. 2d 263 (S.D.N.Y. 2012), in which an insurance "carrier had advanced nearly $7.5 million for criminal defense fees and expenses, but then terminated the advancement after the insureds were indicted." P.I. 16 (citing *XL Specialty*, 874 F. 2d at 266–68). Mr. Rankin notes that CMEEC had advanced nearly $2.5 million in fees before cutting off his advancement, *id.*, and that the court in *XL Specialty* "found that cutting off advancement for legal fees and expenses in complex criminal cases creates an immediate and direct injury and constitutes irreparable harm." (citing *XL Specialty*, 874 F. 2d at 266–68).[4]

CMEEC argues that the cases cited by Mr. Rankin are distinguishable for several reasons. Opp'n P.I. 25. First, CMEEC notes that all of the cases cited by Mr. Rankin, unlike his own here, "involved a claim for advancement of defense expenses in a criminal proceeding *before* a final judgment." *Id.* (emphasis in original). Second, CMEEC argues that a number of the cases cited by Mr. Rankin involve contractual claims for advancement of legal fees under insurance policies, rather than claims about "whether advancement was permitted or required under statutory law or corporate bylaws." *Id.* at 26. Third, CMEEC argues that the three remaining cases concern state

---

[4] Mr. Rankin also points to a related case that noted, "'when a defendant 'refuse[s] to make <u>any</u> payment for the advancement of the plaintiff's defense costs,' the plaintiff is entitled to preliminary injunctive relief." *See CMEEC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 19-CV-00839 (SALM) 2022 WL 3716445, *5 (D. Conn. Aug. 29, 2022) (quoting *In Re Worldcom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 463 (S.D.N.Y 2005) (alterations in original). But, in that case, the court noted that a refusal to make any payment is distinct from an entity that has already made some payments and then ceased payment when it believed its obligation to make advanced payments ceased. *See id.* ("Here, defendant has represented that it has paid CMEEC over four million dollars, which it believes 'encompass[es] the reasonable and necessary fees and costs incurred in all invoices received by National Union through January 3, 2022.' Doc. #229 at 9. Unlike the plaintiff in *In re WorldCom, Inc.*, CMEEC has not shown that delay in any remaining payments justifies the entry of partial final judgment under Rule 54(b)"). Put another way, Mr. Rankin has cited to a case that, rather than support his entitlement to injunctive relief, may instead support the idea that he must show that "delay in any remaining payments justifies" the Court finding in his favor.

statutory rights to advancement of pre-judgment legal fees. *Id.* at 26–27 (citing *Westar Energy*, 552 F.3 at 1225; *Roller Bearing*, 2010 WL 1257715; *Tafeen*, 2005 WL 1314782). CMEEC also notes that Mr. Rankin is an individual insured under its National Union Policy and, if he so chose, could pursue a claim for advancement of his legal fees from the insurance company. *Id.* at 28. In CMEEC's view, because Mr. Rankin could pursue additional avenues of obtaining the money sought from CMEEC, this further suggests a lack of irreparable harm. *Id.*

### ii. Supplemental Briefing

In supplemental briefing, Mr. Rankin argues that CMEEC's failure to advance him fees to defense against the '273 Action still constitutes irreparable harm. Rankin Suppl. P.I. 1.

First, Mr. Rankin draws on cases in which a court found irreparable harm when "the defendant has completely cut off the plaintiff's right to advancement, as CMEEC has done here," emphasizing that, "[w]hen advancement is denied completely as fees and expenses are incurred, the right to such timely payment is lost forever." *Id.* (citing *Westar Energy*, 552 F.3d at 1225; *Roller Bearing Indus. v. Paul*, 2010 WL 1257715, at *6; *In re Worldcom, Inc.*, 354 F. Supp. 2d at 469; *Tafeen*, 2005 WL 1314782, at *3, *aff'd*, 886 A.2d 502 (Del. 2005)).

Second, Mr. Rankin argues that CMEEC should be held to certain arguments it made in 2022 in its ultimately unsuccessful quest to obtain a preliminary injunction against National Union for advancement of legal fees under its insurance policy. *Id.* at 2 ("'The failure to receive defense costs under an insurance policy at the time they are incurred 'constitutes an immediate and direct injury sufficient to satisfy the irreparable harm requirement.'" (quoting *CMEEC v. National Union Fire Insurance Company of Pittsburgh, PA*, 3:19-cv-00839 (SALM), Pl.'s Mem. of L. Supporting Mot. for Prelim. Injunct., ECF 183-1 at 22-23. (March 4, 2022) (internal quotations omitted))).

Third, Mr. Rankin argues that CMEEC has conceded that he is entitled to advancement of fees in the '273 Action by arguing that he would be entitled to injunctive relief if CMEEC had cut off advancement funds before he was finally adjudged as guilty. Rankin Suppl. P.I. 3. He argues that, because he has agreed to participate in a pre-trial diversion program in the '273 Action, he has not been finally adjudged as guilty and, because the charges may be dismissed in eighteen months at the end of the diversion program, he "likely never will be" finally adjudged as guilty in that case. *Id.* According to Mr. Rankin, he has therefore been harmed under CMEEC's own reasoning because it has ceased advancing him fees in the '273 Action before he has been finally adjudged as guilty. *Id.*

Fourth, Mr. Rankin argues that he will continue to incur legal fees in the '273 Action. *Id.* at 4. For example, he argues that he will need to pay legal fees to IKR so that the firm may "ensure that the government complies with its obligations to dismiss the indictment," and that "[i]f Mr. Rankin does not successfully complete the program" IKR will need to try the case or negotiate another resolution. *Id.* at 4. He argues that the fact that his future advancement needs might be limited "does not eliminate the irreparable harm from the denial of his right to payment 'in the midst of litigation.'" *Id.* (quoting *Westar Energy*, 552 F. 3d at 1225). Finally, Mr. Rankin argues that, despite the fact that he has paid IKR a retainer, he remains in financial peril due to (1) his $374,400.31 restitution obligations and other existing financial obligations, (2) "his meager assets, and (3) his losing a year of income due to his incarceration." Rankin Resp. to Suppl. Mem. 3. He notes that even with this financial peril, "Mr. Rankin's irreparable harm fundamentally flows from the permanent deprivation of the right to payment as fees are incurred, not whether he has other assets." *Id.*

In its supplemental briefing, CMEEC argues that Mr. Rankin will not suffer the irreparable harm he claims—that is, that he will be unable to pay his IKR lawyers for their continued representation of him through his participation in the pre-trial diversion program in the '273 Action. Suppl. Opp'n P.I. 3–4. Specifically, CMEEC argues that Mr. Rankin paid his IKR lawyers a fee of $375,000 in November 2023 but, given that he only believes he is owed advancement for the fees in the '273 Action, is only owed $20,872.50 by CMEEC. *See id.* at 3, 73 (attached damages analysis submitted to CMEEC by Mr. Rankin on May 30, 2024).

Furthermore, according to Mr. Rankin's own damages and fees analysis, he incurred $374,048.47 of legal fees between May 2023, when CMEEC ceased advancing him payments, and May 30, 2024.[5] In other words, CMEEC argues that Mr. Rankin cannot be experiencing irreparable harm because he has not yet incurred more legal fees than he has already paid his IKR lawyers. CMEEC argues that "[e]ven assuming [Mr.] Rankin can prove his breach of contract claim related to the 273 Case, money damages following a trial before the fact finder are an adequate remedy and there is no basis for the drastic remedy of injunctive relief." *Id.* at 4. CMEEC also argues that, since Mr. Rankin said that he will "likely never" need to prepare a defense of the '273 Action because successful participation in the pre-trial diversion program will result in a dismissal of those charges, he has conceded that he will likely never incur significant future legal expenses in the '273 Action and thus does not face the risk of loss of his chosen counsel. CMEEC Resp. to Suppl. Mem. 2 (citing Rankin Suppl. P.I. 3).

The Court agrees.

---

[5] The Court reached this figure by adding that $373,053.47 that he claimed in total damages and attorneys' fees owed to him by CMEEC in May 2024 and the additional $995 that CMEEC alleges Mr. Rankin incurred in fees for defense of the '273 Action.

First, because this Court "must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm," *Salinger v. Colting*, 607 F. 3d 68, 80 (2d Cir. 2010), Mr. Rankin's repeated assertions that "irreparable harm is manifest when the defendant has completely cut off the plaintiff's right to advancement," *see e.g.*, Rankin Suppl. P.I. 1; P.I. 15, alone cannot dictate the outcome in this case.

Second, Mr. Rankin concedes he will likely not need IKR's legal assistance for the next eighteen months during the pendency of the deferred prosecution agreement—assuming he upholds his portion of the agreement. Rankin Suppl. P.I. 4 ("At a minimum, if Mr. Rankin successfully completes his Pretrial Diversion Program, the undersigned counsel will need to ensure that the government complies with its obligation to dismiss the indictment. If Mr. Rankin does not successfully complete the program, undersigned counsel will need to try the case or otherwise negotiate the resolution."). Thus, Mr. Rankin alleges a harm either not imminent—it would occur in eighteen months—or speculative—if he does not successfully complete the pretrial diversion program—and does not meet the requirements for irreparable harm. *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("[I]rreparable harm must be shown to be actual and imminent, not remote or speculative."). Mr. Rankin has also not explained why pursuing damages in this lawsuit or pursuing reimbursement from National Union would not redress his injury or why the remaining amount on his retainer would not cover any potential legal fees in the meantime. *See Nechis*, 421 F.3d at 103 ("The basic requirements to obtain injunctive relief have always been a showing of irreparable harm and the inadequacy of legal remedies.") (citing *Ticor Title*, 173 F.3d at 68)).

Third, as CMEEC argues, Mr. Rankin cites cases in support of irreparable harm, which are readily distinguishable. In *Westar Energy, Inc. v. Lake*, 552 F.3d at 1225, the court denied the

plaintiff retrospective relief for the attorney's fees that the defendant had refused to advance because he failed to show irreparable harm, *id.* at 1230, but affirmed the district court's grant of prospective relief, because the plaintiff faced a criminal trial for some of the indictments at issue and the advances were "crucial to defense of his liberty." *Id.* at 1225. But Mr. Rankin does not face the same stakes in the '273 Action.

Similarly, the movants in *In re WorldCom, Inc.*, 354 F. Supp. 2d 455 (2d Cir. 2005), and *Tafeen v. Homestore, Inc.*, 2005 WL 1314782, faced imminent trials and other litigation matters, which Mr. Rankin has conceded he does not. *See In Re Worldcom*, 354 F. Supp. 2d. at 469 ("Roberts has shown irreparable injury. The *Securities Litigation* is proceeding apace. The class action trial begins on February 28, 2005. Every party, including each director defendant, requires effective representation. It is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation. The ability to mount a successful defense requires competent and diligent representation."); *Tafeen*, 2005 WL 1314782, at *2 ("[I]t is clear to the Court that Tafeen would suffer severe and irreparable harm as a result of the stay because it would prevent Tafeen from adequately defending himself in the numerous ongoing litigations in which Tafeen is a defendant. Tafeen has recently been indicted by the United States Department of Justice, the Securities and Exchange Commission has levied civil charges against him, and there are various other civil litigations in which he is a defendant."). And, as to *XL Specialty Insurance Company*, 874 F. Supp. 2d (S.D.N.Y. 2012), even Mr. Rankin notes its distinction from this one: it concerned the termination of "the advancement of legal fees after the insureds were indicted." *Id.* (citing *XL Specialty*, 874 F. Supp. 2d at 266–68).

In short, Mr. Rankin primarily relies upon cases where the parties who were granted preliminary injunctions faced imminent litigation and loss of their counsel. Here, Mr. Rankin

will not require substantial legal assistance until the end of his pretrial diversion program, unless, hypothetically, he violates the terms of the pretrial diversion program. Rankin Suppl. P.I. 4.

Accordingly, Mr. Rankin has not demonstrated by a "clear showing" irreparable harm. *See Mazurek*, 520 U.S. at 972 ("'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" (citations omitted)).

### 2.   The Remaining Preliminary Injunction Factors

A district court may deny a motion for a preliminary injunction if it finds a movant is not "likely to suffer an irreparable, actual and imminent injury." *See Grand River Ent.*, 481 F.3d at 67 ("Because [the Second Circuit] conclude[s] that the district court did not clearly err in finding that Grand River failed to demonstrate that it was likely to suffer an irreparable, actual and imminent injury, we affirm, on that basis alone, that court's denial of Grand River's motion for a preliminary injunction."). Because Mr. Rankin has not demonstrated he is likely to suffer such an injury, the Court need not reach the other factors. *See Inkel v. Connecticut*, No. 17-cv-1400 (MPS), 2019 WL 1230358, at *10 (D. Conn. March 15, 2019) ("And '[w]here a plaintiff does not establish irreparable harm, the court need not address the other factors necessary for the issuance of injunctive relief.'" (quoting *Mrs. Nat'l Pageant, Inc. v. Williams*, 353 F. Supp. 3d 213, 217 (W.D.N.Y. 2019) (citations omitted))); *Rodriguez*, 175 F. 3d at 234 ("In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." (citations omitted)); *Grand River Ent.*, 481 F.3d at 68 ("The finding of no showing of irreparable harm is dispositive.").[6]

---

[6] Mr. Rankin argues that CMEEC is judicially estopped from challenging his entitlement to advancement because of arguments made in its own litigation against National Union. *See* P.I. 9–15. In essence, Mr. Rankin argues that CMEEC may not now argue that its bylaws do not entitle him to advancement because it has repeatedly argued to

The Court also need not decide whether Mr. Rankin moved for a mandatory injunction that would alter the status quo, or a prohibitory injunction to maintain it, as either injunction would require a showing of irreparable harm, which Mr. Rankin has failed to do. *See XL Specialty*, 874 F. Supp. 2d at 271 (recognizing that a mandatory injunction required either a "clear showing" of the entitlement to relief, or "extreme or very serious damage . . . from denial of preliminary relief," and a prohibitory injunction required "irreparable harm," as well as either "likelihood of success on the merits" or "sufficiently serious questions going to the merits . . . and a balance of hardships tipping decidedly toward the party requesting the preliminary relief") (internal quotation marks and citations omitted)). Additionally, as no preliminary injunction will issue arguments on both sides related to whether Mr. Rankin should post a bond in the event of a preliminary injunction are moot. *See* P.I. 14–15; Opp'n P.I. 32–33.

Accordingly, the motion for a preliminary injunction will be denied.

## B. The CMEEC Counterclaims

Mr. Rankin has moved to dismiss four of CMEEC's Counterclaims, arguing that CMEEC has failed to plead that the Affirmation was an enforceable contract, that he breached that contract, that he breached the covenant of good faith and fair dealing, and that he fraudulently induced CMEEC to advancing him legal fees. Mr. Rankin is not moving to dismiss CMEEC's unjust enrichment claim. He "maintains, however, that the unjust enrichment claim is meritless

---

this Court in separate litigation that it has advanced Mr. Rankin fees pursuant to its bylaws. *Id.* In order to be judicially estopped from making a certain argument, (1) a party's position must be "clearly inconsistent" with a prior position, (2) "courts regularly inquire whether the party has succeeded in persuaded a court to accept its earlier position," and (3) a party must have derived "unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). As Judge Meyer explained in evaluating Mr. Rankin's motion to dismiss, it is not inconsistent for CMEEC to argue that it advanced Mr. Rankin fees under its bylaws. *See infra* 31–34. Furthermore, it is not clear to this Court that CMEEC has derived an unfair advantage over Mr. Rankin in arguing that it advanced him legal fees pursuant to its bylaws. Indeed, CMEEC's attempts to dismiss Mr. Rankin's breach of contract claims based on its bylaws were rejected, *Rankin*, 2024 WL 1344790, at *3–*4. Based on his failure to demonstrate two out of the three factors laid out by the Supreme Court for evaluating judicially estoppel, CMEEC is not judicially estopped from arguing that Mr. Rankin is not entitled to advancement.

due to the controlling bylaws." MTD 20 n.2.[7]

## 1.  The Enforceability of the Affirmation

Under Connecticut law, a breach of contract claim has four elements: (1) the formation of

an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and

(4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540

(Conn. 2014) (citing *Maloney v. Conn. Orthopedics, P.C.*, 47 F. Supp. 2d 244, 249 (D. Conn.

1999)). Furthermore, consideration is a necessary element of a contract. *Doctor's Assoc., Inc. v.*

*Alemayehu*, 934 F. 3d 245, 252 (2d Cir. 2019) ("Connecticut . . . law treat[s] consideration as a

necessary element of contract formation, following the standard formulation of contract

formation." (collecting cases)). "'Consideration is that which is bargained-for by the promisor

and given in exchange for the promise by the promise[e].... Consideration consists of a benefit to

the party promising, or a loss or detriment to the party to whom the promise is made.'"

*Willamette Mgmt. Assocs., Inc. v. Palczynski*, 38 A.3d 1212, 1220 (Conn. App. 2012) (quoting

*Gen. Elec. Co. v. Trans. Logistics*, 893 A.2d 467, 471 (Conn. App. 2006)) (cleaned up).

In its Counterclaim, CMEEC sought a declaration that the Affirmation is an enforceable

contract and the CMEEC's promise to repay as set forth in the Affirmation is sufficient

---

[7] Originally, Mr. Rankin argued that none of CMEEC's claims are ripe. *See* MTD 13 –15. At the October 1, 2024, hearing, however, his counsel conceded that CMEEC's claims were ripe as to the '272 Action, but still unripe as to the '273 Action. Hr'g Tr. 34 ("MR. RAABE: . . . With regard to the ripeness argument, first of all, that's now moot with regard to '272. The ripeness argument I think is still extant with regard to '273 for all the reasons we've briefed."). "The doctrine of ripeness forbids the Court from deciding issues that 'are mere hypothetical questions.'" *U.S. Sec. & Exch. Comm'n v. Ahmed*, 15-cv-675, 2020 WL 88112727, at *1 (D. Conn. Nov. 5, 2020) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)). However, "a court may properly hear a dispute if there is no reasonable likelihood that further factual development would 'significantly advance [the Court's] ability to deal with the legal issues presented.'" *Id.* (quoting *Nat'l Park Hospitality Assoc. v. Dep't of the Interior*, 538 U.S. 803, 812 (2003)). Since Mr. Rankin concedes that the claims are ripe with regard to the '272 Action, further factual development will not alter whether CMEEC is entitled to declaratory relief or to damages for breach of contract, bad faith, or fraudulent inducement claims, which all at least partially alleged that Mr. Rankin has already damaged CMEEC by either refusing to pay back money he currently owes or accepting an advance he never intended to repay. CMEEC's claims are ripe for adjudication.

consideration for the contract to be enforceable. Councl. ¶¶ 31–34.

Mr. Rankin argues that CMEEC has not plausibly alleged the Affirmation is an enforceable contract because it "did not allege that it provided Mr. Rankin with consideration for the purported contract." MTD 15–16. He further argues that CMEEC's bylaws constituted an extant obligation to indemnify and advance Mr. Rankin legal fees and expenses. *Id.* at 16. Mr. Rankin also argues that CMEEC demanded he sign the Affirmation so that he could receive advancement to which he was already entitled under CMEEC's bylaws. *Id.*

Mr. Rankin points to Judge Meyer's decision on CMEEC's motion to dismiss his breach of contract suit against CMEEC, in which he alleges CMEEC breached its contractual obligations under its own bylaws by refusing to advance him legal fees in its two criminal cases and demanding he repay CMEEC for fees it had already advanced. *Rankin*, 2024 WL 1344790, at *3 ("Rankin's claim for breach of contract against CMEEC has two parts. First, he alleges that CMEEC violated its bylaws by refusing to advance him legal fees for his two criminal cases. Second, he alleges that CMEEC has violated its bylaws by demanding that Rankin reimburse CMEEC for fees already advanced."). In ruling on CMEEC's motion to dismiss Mr. Rankin's breach of contract claims, Judge Meyer noted:

> Under Connecticut law, contract interpretation turns on the parties' intent. When there is definitive contract language, the parties' intent is a question of law. *See Old Colony Const., LLC v. Town of Southington*, 316 Conn. 202, 213 (2015). If the language is ambiguous, intent is a question of fact. *Ibid.* Because questions of fact generally cannot be resolved at the motion to dismiss stage, CMEEC can prevail only if the language of the contract unambiguously precludes the mandatory advancement of legal fees to Rankin. *See, e.g.*, *Prysmian Cables & Sys. USA LLC v. ADT Com. LLC*, 665 F. Supp. 3d 236, 244 (D. Conn. 2023); *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 374 (D. Conn. 2018). And a contract is unambiguous only when "'its language is clear and conveys a definite and precise intent.'" *Nation-Bailey v. Bailey*, 316 Conn. 182, 192 (2015) (quoting *Parisi v. Parisi*, 315 Conn. 370, 383

(2015)). If a contract can reasonably be read more than one way, then its language is ambiguous. *Ibid.*

*Id.* Thus, "the bylaw language is at least ambiguous, if not definitively in Rankin's favor. Article IV.1 made Rankin a CMEEC employee when he was CEO, and Article IV.6(b) provides CMEEC employees with the right to advancement of legal fees. The natural conclusion is that Rankin is entitled to advancement. True, Article IV.6(a) only provides officers with indemnification—not advancement—but nothing in the bylaws suggests that Articles IV.6(a) and IV.6(b) are mutually exclusive." *Id.* (citations omitted).

Drawing on Judge Meyer's previous ruling, Mr. Rankin now argues that CMEEC had a contractual obligation to advance him the legal fees under the bylaws. Further, he asserts that "CMEEC failed to plead any facts in its Counterclaim that suggest that it provided consideration to Mr. Rankin for the Affirmation," and that the "entire [Affirmation] consists of two paragraphs and there is no recitation of consideration." MTD 17 (citing Countercl. ¶ 6). Mr. Rankin argues that, since he was offered no additional consideration for signing the Affirmation and there is no additional consideration mentioned in the Affirmation, the contract is unenforceable. *Id.*

CMEEC argues that Mr. Rankin's no consideration argument relies entirely on a misinterpretation of the bylaws and of Judge Meyer's previous decision. Opp'n MTD 25. In its view, there was no unambiguously expressed "'extant' unconditional obligation to advance his legal fees" in the absence of the Affirmation. *Id.* CMEEC argues that Mr. Rankin misreads Judge Meyer's previous ruling, and that, rather than determining as a matter of law that the bylaws entitle Mr. Rankin to automatic advancement, Judge Meyer instead concluded that the "bylaw language is at least ambiguous." *Id.* at 26 (quoting *Rankin*, 2024 WL 1344790, at *3). CMEEC argues that, for this Court to dismiss the contract as unenforceable, it would have to find that the bylaws unconditionally entitled Mr. Rankin to advancement of his legal fees, and that the bylaws

do no such thing.

First, CMEEC argues that Mr. Rankin is selectively quoting the bylaws, particularly

Article IV, § 6. *Id.* at 26–27. In his motion to dismiss, Mr. Rankin quotes the following section of

Article IV, § 6:

> (b) Each CMEEC employee **shall be indemnified for all costs and expenses, including the right to receive in advance reasonable legal fees actually incurred by the employee** in connection with the defense of any claim, action, suit, or proceeding in which they may be involved or to which they may be a party by reason of their being or having been such employee, except in relation to matters as to which they shall be **finally adjudged** in such action, suit, or proceeding to be liable for willful or wanton negligence or misconduct in the performance of duty.

MTD 9 (quoting CMEEC Bylaws, Art. IV § 6(b)) (emphasis in original). However, CMEEC

calls attention to the final paragraph of Article IV § 6(b):

> The CMEEC General Counsel is hereby authorized to take such actions as are necessary to determine that the employee acted in good faith and in a manner that the employee reasonably believed to be in, or not opposed to, the best interests of CMEEC and that the employee had a reasonable belief that the employee's conduct was lawful.

Opp'n MTD 27 (quoting CMEEC Bylaws, Art. IV § 6(b))[8]. CMEEC argues that Mr. Rankin

ignores the conditionality of the bylaws' plain language.

CMEEC also argues that it was mandated under Connecticut law to obtain an affirmation

from Mr. Rankin before advancing him fees. It argues that, as a non-stock corporation, it is

subject to indemnification and advancement provisions in Connecticut General Statute § 33

Chapter 602, which governs non-stock corporations. *Id.* at 26–27. Under this law, a "corporation

---

[8] CMEEC argues that Mr. Rankin occupied his position as CEO as an employee under "CMEEC Bylaws Section IV.1, which provides that certain Officers, including the CEO, 'shall be CMEEC employee.'" Opp'n MTD 26 n.8. Mr. Rankin does not dispute that he occupied his role as an employee. MTD 9 ("As the CEO, Mr. Rankin was an 'employee' of CMEEC and entitled to advancement.").

may provide indemnification of or advance expense to a director, officer or agent only as permitted by section 33-1116 to 33-1124, inclusive." *Id.* at 28–29 (quoting Conn. Gen. Stat. § 33-1125). CMEEC notes that Section 33-1122(a) provides that "A corporation may indemnify and advance expenses . . . to an officer, employee or agent," however "if he is an ***officer, employee or agent but not a director***, to such further extent, consistent with public policy, as may be provided by contract, the certificate of incorporation, the bylaws or a resolution of the board of directions." *Id.* at 29 (emphasis in original) (quoting Conn. Gen. Stat. § 33-1122(a)). Additionally, "[a] corporation ***may delegate to its general counsel*** . . . the ability under this subjection to determine that indemnification ***or*** advancement to such an officer, employee or agent is permissible and the ability to authorize payment of such" advancement. *Id.* (emphasis in original). CMEEC highlights Section 33-1119, which reads in relevant part:

> (a) A corporation ***may***, before final disposition of a proceeding, advance funds to pay for or reimburse the reasonable expenses incurred in connection with the proceeding by an individual who is a party to the proceeding because [he] is a member of the board of directors ***if*** the director delivers to the corporation:
>
> (1) A written affirmation of the director's good faith belief that the relevant standard of conduct described in section 33-1117 has been met by the director …; and
>
> (2) A written undertaking to repay any funds advanced if the director is not entitled to mandatory indemnification under section 33-1118 and it is ultimately determined under section 33-1120 or 33-1121 that the director has not met the relevant standard of conduct described in 33-1117.

*Id.* at 30 (emphasis in original) (quoting Conn. Gen. Stat. § 33-1119). CMEEC argues that these statutes, taken together, give it the permissive ability to advance legal feeds to an employee "*if* the employee delivers to the corporation the described affirmation and the described undertaking to repay." *Id.* (emphasis in original). That statutory regime, combined with the amended bylaws' authorization for the general counsel to "take such actions as are necessary

28

to determine that an employee acted in good faith" before advancing him funds, *id.*, mean that "Mr. Rankin's Affirmation and Undertaking . . . was, and remains, a statutorily-mandated condition precedent to CMEEC's decision to advance defense costs." *Id.* Further, that CMEEC's decision to amend its bylaws in May 2018 "to express a general commitment to make advancements to employees before disposition of a particular proceeding does not, and cannot, reasonably mean that such commitment was unconditional and divorced from the statutorily-mandated Affirmation and Undertaking precedent to a valid advancement." *Id.*

Therefore, CMEEC argues, Mr. Rankin was required to provide CMEEC with consideration for its advancement of legal fees in the form of the Affirmation and Undertaking rather than, as Mr. Rankin argues, CMEEC being required to provide consideration to him. *Id.* at 31.

Regarding CMEEC's statutory argument, Mr. Rankin argues that General Statutes Title 33 does not apply to CMEEC because CMEEC is not a corporation that would be subject to the Revised Nonstock Corporation Act. Reply to Opp'n MTD 7. Instead, CMEEC is constituted under Connecticut General Statues Title 7 governing "Municipalities." *Id.* That CMEEC's enabling act grants it "'powers that might be exercised by a natural person or a private corporation,'" *id.* (citations omitted), Mr. Rankin argues, reinforces his position that CMEEC is *not* a corporation. He further argues that to find that this language supports the idea that CMEEC is subject to the Nonstock Corporation Act would be equivalent to finding that the legislature included surplus language in CMEEC's enabling statute. *Id.* (citing *Am. Petrol. Events, Inc. v. Blumenthal*, 937 A.2d 1184, 1191 (Conn. 2008) ("Interpreting a statute to render some of its language superfluous violates cardinal principles of statutory interpretation.")) Mr. Rankin also notes that, had the legislature wanted to subject CMEEC to the same indemnification and

advancement restrictions as those in play in the Nonstock Corporation Act, it would have done so. *Id.* at 12 (citing *State v. Harris*, 632 A.2d 50, 56 (Conn. App. 1993) ("[W]hen the legislature uses different language, the legislature intends a different meaning of one statute from the other."))

The Court agrees with Mr. Rankin as to his argument that the Nonstock Corporation Act does not apply to CMEEC. But the Court agrees with CMEEC that it has sufficiently pled that the Affirmation constitutes an enforceable contract.

As to the parties' statutory arguments, CMEEC argues that it is a "corporation" for purposes of Title 33. Title 33 defines a corporation, however, as follows.

> "Corporation" or "domestic corporation" means a corporation without capital stock or shares, which is not a foreign corporation, incorporated under the laws of this state, whether general law or special act and whether before or after January 1, 1997, but shall not include towns, cities, boroughs or any municipal corporation or department thereof.

Conn. Gen. Stat. § 33-1002(8). CMEEC's enabling statute, Title 7, defines CMEEC as follows.

> "Municipal electric energy cooperative" or "municipal cooperative" means a separate legal entity hereafter created by concurrent resolutions of two or more municipal electric utilities to exercise any of the powers as provided in this chapter in connection with the acquisition, construction, reconstruction, operation, repair, extension or improvement of electric power generation or transmission facilities, or the acquisition of any interest therein or of any capacity thereof.

Conn. Gen. Stat. § 7-233b(7). That a municipal energy cooperative is a creation of a "concurrent resolution of two or more municipal electric utilities" appears to exclude it from the Nonstock Corporation Act. While CMEEC is empowered by its enabling statute "generally to exercise in connection with its property and affairs, and in connection with property within its control, any and all powers that might be exercised by a natural person or a private corporation in connection with similar property and affairs," *Id.* § 7-233e(29), the plain statutory language reinforces the

notion that CMEEC is not a corporation and that, had the legislature intended to subject CMEEC to the same restrictions as a corporation, it would have so stated. *See Watson v. Caruso*, 424 F. Supp. 3d 231, 240 (D. Conn. 2019) ("In the absence of controlling state law, the Court might ordinarily interpret the state statute using the normal rules of statutory interpretation." (citing *Sealed v. Sealed*, 332 F.3d 51, 59 (2d Cir. 2003))).

Without its statutory arguments, however, CMEEC has still sufficiently pled that the Affirmation constitutes an enforceable contract for which there was sufficient consideration. "Under Connecticut law, contract interpretation turns on the parties' intent. When there is definitive contract language, the parties' intent is a question of law. If the language is ambiguous, intent is a question of fact." *Rankin*, 2024 WL 1344790, at *5 (citing *Old Colony Const.*, 113 A.3d at 412). "Because questions of fact generally cannot be resolved at the motion to dismiss stage," the moving party can prevail only "if the language of the contract unambiguously" supports its position. *Id.* (citing *Prysmian Cables*, 665 F. Supp. 3d at 244 and *Walker*, 305 F. Supp. 3d at 374). "'A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous.'" *Bailey*, 112 A.3d at 151 (quoting *Parisi*, 107 A.3d at 929 (citations omitted)).

As Judge Meyer previously found, "CMEEC [had] not demonstrated that the bylaw language clearly and unambiguously supports its reading. So [the Court] den[ied] CMEEC's motion to the dismiss . . . Rankin's breach-of-contract claim." *Rankin*, 2024 WL 1344790, at *5. Mr. Rankin likewise has not demonstrated that the bylaws language clearly and unambiguously points to his preferred reading.

Because "CMEEC's CEO is both an officer and an employee," *id.*, Bylaws Article

IV.6(a) must be examined as it applies to officers, and Article IV.6 (b) as it applies to employees.

Article IV.6(a) reads in relevant part:

> (a) . . . Each Member Utility Representative, Alternate Utility Representative, Municipal Representative, and Officer of CMEEC and persons occupying positions in the CMEEC organization pursuant to these Bylaws, whether or not then in office, and their personal representatives, shall be indemnified and held harmless by CMEEC against all costs and expenses, including reasonable attorney fees and/or defense of suit, actually incurred by them in connection with the defense of any claim, action, suit, or proceeding in which they may be involved or to which they may be made a party by reason of their being or having been such Member Utility Representative, Alternate Utility Representative, Municipal Representative or Officer, except in relation to matters as to which they shall be finally adjudged in such action, suit, or proceeding to be liable for willful or wanton negligence or misconduct in the performance of duty. . . Such costs and expenses shall include but not be limited to amounts reasonably paid in settlement for curtailing the costs of litigation, **but only if CMEEC is advised in writing by its counsel that in their opinion the person indemnified did not commit such willful or wanton negligence or misconduct**.

Opp'n MTD 6–7 (emphasis added). Article IV.6 (b) reads in relevant part:

> (b) Each CMEEC employee shall be indemnified for all costs and expenses, including the right to receive in advance reasonable legal fees actually incurred by the employee in connection with the defense of any claim, action, suit, or proceeding in which they may be involved or to which they may be a party by reason of their being or having been such employee (a "Claim"), except in relation to matters as to which they shall be finally adjudged in such action, suit, or proceeding to be liable for willful or wanton negligence or misconduct in the performance of duty. . . . **The CMEEC general counsel is hereby authorized to take such actions as are necessary to determine that the employee acted in good faith and in a manner that the employee reasonably believed to be in, or not opposed to, the best interests of CMEEC and that the employee had a reasonable belief that the employee's conduct was lawful**.

*Id.* at 7 (emphasis in original). On a motion to dismiss, this Court, "'must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor[.]" *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 374 (2d Cir. 2024) (quoting *Miller v. Wolpoff & Abrahamson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)).

Both provisions of the bylaws at issue seem to allow CMEEC's counsel to make the ultimate determination whether indemnification or advancement meets the conditions set forth in the bylaws, meaning that indemnification and advancement were conditional and not guaranteed. Significantly, the language in the Affirmation is amplified in the bylaws, *see id.* at 7 (authorizing the "CMEEC general counsel" to "take such actions as are necessary to determine that the employee acted in good faith and . . . in, or not opposed to, the best interests of CMEEC and . . . had a reasonable belief that the employee's conduct was lawful."), adding further support to the notion that CMEEC's decision to advance Mr. Rankin legal fees was based on his representation and "contingent upon the Affirmation and Undertaking," Countcl. ¶ 10, and providing adequate consideration for the Affirmation to constitute an enforceable contract.

Indeed, the bylaws are ambiguous enough to suggest that, in exchange for Mr. Rankin's promise to repay if he were "finally adjudged" to have committed misconduct, CMEEC would advance him legal fees in accordance with its bylaws: consideration. *See Willamette Managmt.*, 38 A.3d at 1220 (Consideration is that which is bargained-for by the promisor and given in exchange for the promise by the promise[e].... Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." (quoting *Gen. Elec. Cap. Corp.*, 893 A.2d at 471 (cleaned up)).

Accordingly, CMEEC has plausibly pled that the Affirmation is an enforceable contract supported by consideration.

## 2.  The Breach of Contract Claim

"The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers,* 87 A.3d at 540 (citing *Maloney*, 47 F. Supp. 2d at 249).

CMEEC argues that Mr. Rankin is required under the Affirmation "to promptly repay CMEEC on request the legal fees, expense and costs that CMEEC advanced for reimbursed on his behalf for the defense of the '272 Action." *Id.* ¶ 59. CMEEC claims that Mr. Rankin is in breach of his contractual obligations under the Affirmation because he has refused to repay CMEEC following its demand that he do so. *Id.* ¶¶ 60–63.

In response, Mr. Rankin argues that the Affirmation is not enforceable because it did not have consideration. Instead, he made a promise to CMEEC in exchange for CMEEC pledging to do something it was already obligated under the bylaws to do: advance him legal fees. Reply to Opp'n MTD 10–11 (citing *Harley v. Indian Spring Land Co.*, 3 A.3d 992, 1010 (Conn. App. 2010) ("[A] promise to do that which one is already bound by his contract to do is not sufficient consideration to support an additional promise by the other party to the contract.")). In other words, Mr. Rankin argues that the breach of contract claim must be dismissed because CMEEC seeks to justify its breach of contract claim solely based on Title 33.

The Court disagrees.

Because, as discussed above, CMEEC has plausibly pled that the Affirmation is an enforceable contract, *see Willamette Managmt.*, 38 A.3d at 1220 ("Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made.") (citations omitted), and CMEEC has plausibly alleged a breach of that contract and damages, *see* Countcl. ¶¶ 60–63 ("Following the entry of judgment in the '272 Action, CMEEC demanded that

[Mr.] Rankin repay CMEEC the legal fees, expenses and costs that CMEEC paid to or on behalf of the plaintiff for the defense of the '272 Action. Despite demand, [Mr.] Rankin has refused to pay CMEEC. By his actions, [Mr.] Rankin breached the Affirmation and Undertaking. As a result of [Mr.] Rankin's breach of his contractual obligations, CMEEC has been damaged."), CMEEC has plausibly pled a breach of contract claim.

Accordingly, the motion to dismiss CMEEC's breach of contract claim will be denied.

### 3.  The Bad Faith Claims

"[I]t is axiomatic that the ... duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship.... In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *M&T Bank v. Lewis*, 312 A.3d 1040, 1056 (Conn. 2024) (quoting *Renaissance Mgmt. Co. v. Conn. Hous. Fin. Auth.*, 915 A.2d 290, 297–98 (Conn. 2007)) (alterations in original). "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004) (quoting *Celentano v. Oaks Condominium Ass'n*, 830 A.2d 164, 188 (Conn. 2003)).

"To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Id.* (citations omitted) (alternations in original). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights

or duties, but by some interested or sinister motive .... Bad faith means more than mere negligence; it involves a dishonest purpose." *Habetz v. Condon*, 618 A.2d 501, 504 (Conn. 1992) (citing Black's Law Dictionary (5th Ed.1979) & *Hartford Nat. Bank & Tr. Co. v. Credenza*, 177 A. 132, 133 (Conn. 1935)).

CMEEC alleges that Mr. Rankin breached the implied covenant of good faith and fair dealing in at least six ways.

First, he allegedly refused to repay CMEEC for the legal fees, expenses, and costs it advanced him under the Affirmation based on "an untenable and frivolous legal position." Countercl. ¶ 120(a). Second, he allegedly accepted payment of legal fees, expenses, and costs over the course of nearly five years totaling over $2.5 million, that were allegedly contingent and based upon his representations in the Affirmation, which he then claimed was legally unenforceable allegedly "in an effort to avoid having to comply with his obligations under" the Affirmation. *Id.* ¶ 120(b)

Third, he allegedly "misled CMEEC into paying the legal fees, expenses, and costs" to his attorneys for their defense of the '273 and '272 Actions for a period of five years allegedly "with the intention not to honor his obligations under the Affirmation and Undertaking[.]" *Id.* ¶ 120(c). Fourth, he initiated litigation against CMEEC in an effort to compel further payment of legal fees—which CMEEC alleges any alleged right to was contingent upon the Affirmation— while simultaneously allegedly disavowing the enforceability of the Affirmation that he signed while allegedly in a fiduciary role as CEO of CMEEC. *Id.* ¶ 120(d). He allegedly did so "for the purpose of benefiting his personal financial interests and the financial interest of his attorney agents while harming the financial interests of CMEEC and ultimately its members and ratepayers." *Id.*

Fifth, he allegedly refused to pursue his claim for advancement of legal fees under the directors' and officers' liability insurance policy CMEEC purchased from National Union, allegedly "notwithstanding his knowledge and statements that he is insured under the policy and a court order that National Union was ordered to advance defense costs under the insurance policy." *Id.* ¶ 120(e).

Sixth, he allegedly initiated litigation against CMEEC when it demanded he repay the legal fees it had advanced to him in accordance with the terms of the Affirmation. *Id.* ¶ 120(f). He allegedly did so by asserting allegedly "untenable, frivolous and meritless legal claims" allegedly "for the purpose of avoiding obligations owed to CMEEC under the Affirmation and Undertaking" allegedly while seeking to benefits himself and his attorneys "financially and to the financial detriment of CMEEC and ultimately its rate payers." *Id.*

As a result of his behavior, "CMEEC [allegedly] suffered losses and damages, including but not limited to attorney's fees, interest and costs for which [Mr. Rankin] is liable to CMEEC." *Id.* ¶ 123.

Mr. Rankin argues that CMEEC's bad faith claim must fail because "Connecticut law . . . requires the existence of a valid and enforceable contract to make a bad faith contract claim." MTD 14 (citing *Hoskins v. Titan Equites Group, Inc.*, 749 A.2d 1144, 1146 (Conn. 2000) ("[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.")). Because CMEEC has failed to plead the Affirmation is an enforceable contract, argues Mr. Rankin, the bad faith claim must fail. *Id.*

In response, CMEEC maintains that the Affirmation is an enforceable contract. *See* Opp'n MTD 35 ("Rankin's argument that the Affirmation and Undertaking is unenforceable

absent some 'consideration' is unavailing. The Court should deny Rankin's motion under Rule 12(b)(6).").

The Court agrees.

As discussed above, at this stage of the litigation, CMEC has successfully pled that the Affirmation is an enforceable contract, and CMEEC also has alleged that the "wrongful conduct and impairment of CMEEC's rights under the Affirmation and Undertaking was done intentionally, without an honest purpose[.]" Countercl, ¶ 122. In evaluating the Counterclaim, the Court is permitted to examine documents incorporated into the Counterclaim by reference, *see, e.g.*, *Pressman v. Purcell*, No, 17-cv-1918 (JCH), 2018 WL 6069099, at *5 (D. Conn. Nov. 20, 2018) (recognizing that, "in reviewing a motion to dismiss, the court is limited to the allegations stated on the face of the Counterclaim, as well as documents attached to the Counterclaim, or incorporate by reference"), including the Complaint. In his Complaint, Mr. Rankin alleges, "CMEEC required [him] to sign the Affirmation and Undertaking in 2018 before it would meet its obligations under the Bylaws to advance Mr. Rankin's legal fees and expenses in the '272 and '273 Actions. However, CMEEC did not at that time provide Mr. Rankin any additional consideration for signing the Affirmation and Undertaking." Compl. ¶ 49.

As a result, taking all of the allegations in the Counterclaim as true and taking all inferences in favor of CMEEC, CMEEC has plausibly pled that Mr. Rankin entered into the Affirmation believing it to be unenforceable not by mistake, but for the interested purpose of obtaining advancement of legal fees, and that Mr. Rankin breached the covenant of good faith and fair dealing. *See Habetz*, 618 A.2d at 504 ("Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill

some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." (citations omitted)).

Accordingly, Mr. Rankin's motion to dismiss CMEEC's bad faith breach of the implied covenant of good faith and fair dealing claim will be denied.

### 4. The Fraudulent Inducement Claim

"Under Connecticut law, the essential elements of a cause of action sounding in fraud, including claims of misrepresentation and fraud in the inducement, are: '(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury.'" *456 Corp. v. United Natural Foods, Inc.,* No. 09-cv-1983 (JBA), 2011 WL 87292, at *3 (D. Conn. Jan. 11, 2011) (quoting *Updike, Kelly & Spellacy, P.C. v. Beckett,* 850 A.2d 145, 166 (Conn. 2004)).

Furthermore, "Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: 'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' We have explained that in order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).

"Though a plaintiff may generally plead the requisite fraudulent intent, he must allege supporting facts that give rise to a 'strong inference of fraudulent intent,' which may include 'either (a) ... facts ... show[ing] that defendants had both motive and opportunity to commit

fraud, or (b) ... facts ... constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness.'" *Dubois v. Maritimo Offshore Pty Ltd.*, 422 F. Supp. 3d 545, 561 (quoting *Suez Equity Investors, L.P. v. TD Bank*, 250 F.3d 87, 99–100 (2d Cir. 2001)) (alterations in original).

CMEEC alleges that, at the time Mr. Rankin signed the Affirmation "he [allegedly] had the present intention not to fulfill the promise he made in the Affirmation" to promptly repay CMEEC for the legal fees it advanced. Countercl. ¶ 155. Because he allegedly signed the Affirmation without a "present intention to perform," he made a knowingly false representation to CMEEC, which CMEEC relied on to its detriment by advancing him legal fees. *Id.* ¶¶ 156–59.

Mr. Rankin argues that the fraudulent inducement claim should be dismissed under Federal Rule of Civil Procedure 9(b) because CMEEC has failed to plead its fraud claim with "sufficient particularity." MTD 20 (citing *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, 23-cv-8521 (JSR), 2023 WL 8534865, at *2 (S.D.N.Y. Dec. 11, 2023)). Mr. Rankin notes that "the Second Circuit requires litigants who assert fraud claims to either allege facts (1) showing the defendant had a motive and opportunity to commit fraud or (2) that constitute circumstantial evidence of misbehavior or recklessness." *Id.* at 20 (citing *Allstate Ins. Co. v. Advanced Health Professionals, P.C.*, 256 F.R.D. 49, 63 (D. Conn. 2008) (quoting *Lerner*, 459 F.3d at 290-91)). He argues that CMEEC's allegations that Mr. Rankin made a "'knowingly false representation'. . . to 'induce CMEEC to advance [his] legal fees,'" *id.* (quoting Countercl. ¶ 157)), are merely conclusory and do not meet "the *Iqbal* standard governing Rule 12(b)(6), let alone the particularly requirement for fraud claims under Rule 9(b)." *Id.* at 21.

CMEEC responds that "[m]otive and opportunity are manifest." First, regarding opportunity, he was aware of the language adopted in the May 2018 bylaws regarding advancement. Thus, CMEEC argues, if it was "'unambiguously'" clear to Mr. Rankin that the

Affirmation was unenforceable given those bylaws, he signed the promise to repay CMEEC for

its advancement without the intention of ever doing so. *See* Opp'n MTD 35–36. Second,

regarding motive, CMEEC argues that Mr. Rankin was under federal investigation when he

signed the Affirmation, was aware of the May 2018 bylaws, and was also aware of the directors'

and officers' insurance policy through National Union. *Id.* at 36. Taken together, CMEEC argues

that Mr. Rankin's "motive to make expedient promises in order to obtain 'free money' from

CMEEC to finance the defense of his two federal prosecutions is manifest." *Id.*

      Mr. Rankin replies that CMEEC required him to sign the Affirmation before it would

meet its preexisting obligations under the bylaws to advance him legal fees and expenses. Reply

to Opp'n MTD 13. "Because CMEEC had a pre-existing obligation to advance the fees and

expenses, as a matter of law, it could not have detrimentally relied on anything in the

Affirmation as an inducement to make the advancement." *Id.* (citing *Billington v. Billington*, 595

A.2d 1377, 1379 (Conn. 1991)). He further argues that CMEEC's fraudulent inducement claim is

based on the inaccurate interpretation of the bylaws that they do not require advancement to Mr.

Rankin and should therefore be dismissed.

      The Court disagrees.

      CMEEC has satisfied the pleading standard under Connecticut law and Federal Rule of

Civil Procedure 9(b) and has pled the requisite fraudulent intent to survive a motion to dismiss.

      First, under Connecticut law, the statement in the Affirmation was a statement of fact,

and Mr. Rankin signed the statement affirming "If it is ultimately determined in accordance with

the by-laws of CMEEC, resolutions of the CMEEC Board of Directors and applicable state law

that I am not entitled to indemnification, I will promptly repay CMEEC on request for the

amounts of legal fees, expenses, and other costs that CMEEC has advanced or reimbursed on my

behalf for legal fees and expenses." Countercl. ¶ 6. That factual statement allegedly was untrue

and continues to be so, at least regarding the '272 Action because Mr. Rankin has conceded he

will not be pursuing further appeals, he has been finally adjudged as guilty, and he has not repaid

CMEEC for the legal fees it advanced him for his defense of that Action. *See Updike, Kelly and

Spellacy*, 850 A.2d at 166 (recognizing as "essential elements of an action in fraud . . . (1) that a

false representation was made as a statement of fact; (2) that it was untrue and known to be

untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4)

that the latter did so act on it to his injury")

In Mr. Rankin's filings, he repeatedly emphasizes that he believes now and believed at

the time of the Affirmation that CMEEC had a pre-existing obligation to advance him legal fees

and that the document he was signing was patently unenforceable. *See* MTD 17 ("The entire

document consists of two paragraphs and there is no recitation of consideration."); Reply to

Opp'n MTD 13 ("Because CMEEC had a pre-existing obligation to advance the fees and

expenses, as a matter of law, it could not have detrimentally relied on anything in the

Affirmation as an inducement to make the advancement."). But that argument is not a basis for

resolving this claim as a matter of law at this stage of the proceedings. *See Comerzbank AG*, 100

F.4th at 374 (requiring, "[o]n a motion to dismiss," the "draw[ing] all inferences in the non-

moving party's favor").

Moreover, in its Counterclaim, CMEEC allegedly advanced Mr. Rankin the fees

"contingent on the Affirmation." Countercl. ¶ 10. In Mr. Rankin's own Complaint, he seems to

acknowledge that the Affirmation was signed for the purpose of obtaining the advancement of

legal fees. *See* Compl. ¶ 10 ("There is no requirement in the Bylaws that Mr. Rankin repay any

advanced funds. For this reason, CMEEC demanded that Mr. Rankin sign an Affirmation and

undertaking before advancing him legal fees and expenses . . . ."); *see also NovaFund Advisors, LLC v. Capitala Group, LLC*, No. 18-cv-1023 (MPS), 2020 WL 230089, at *3 (D. Conn. Jan. 14, 2020) ("In deciding a motion to dismiss under Rule 12(b), the Court may consider documents attached to, integral to, or incorporated by reference in the Counterclaim." (citing *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002))). And, as a result of Mr. Rankin signing the Affirmation, CMEEC advanced him more than $2.5 million over five years. *See* Countercl. ¶ 120(b); *see also* Compl. ¶ 48 ("On June 8, 2023, CMEEC's counsel advised Mr. Rankin that it was requiring him to repay $2,477,099.04 in legal fees and expenses that it had advanced to him in connection with the '272 Action pursuant to an 'Affirmation and Undertaking' that CMEEC had drafted and required Mr. Rankin to sign in August 2018."). These allegations thus satisfy with specificity the third and fourth elements of CMEEC's fraudulent inducement claim. *See Updike, Kelly and Spellacy*, 850 A.2d at 166 (identifying the third and fourth "essential elements of an action in fraud" as "(3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury")

Second, CMEEC has adequately pled fraud with particularity under the standard of Federal Rule of Civil Procedure 9(b). It has specified that the Affirmation was fraudulent; that Mr. Rankin was the speaker of the false statement in question; that it was signed on August 7, 2018, *see* Countercl. 8 (¶ 48); and it has explained why the statements were fraudulent and pled sufficient facts that give rise to a "strong inference of fraudulent intent." *Dubois*, 422 F. Supp. 3d at 561 (citing *Suez Equity Investors*, 250 F.3d at 99–100). Specifically, it has plausibly pled that Mr. Rankin had both the motive and opportunity, *see* Countercl. 8 (¶ 48), to fraudulently induce CMEEC to act under the Affirmation, in that he was under federal investigation at the time he signed the document, Countercl. ¶ 5, and, as he has pointed out to this Court many times, did not

believe the document he signed contained sufficient consideration to constitute a contract. *See id.* ¶ 15; *see also* MTD 17 ("The entire [Affirmation] consists of two paragraphs and there is no recitation of consideration."); Compl. ¶ 49 ("CMEEC required Mr. Rankin to sign the Affirmation and Undertaking in 2018 before it would meet its obligations under the Bylaws to advance Mr. Rankin's legal fees and expenses in the '272 and '273 Actions. However, CMEEC did not at that time provide Mr. Rankin any additional consideration for signing the Affirmation and Undertaking." (emphasis added)).

As a result, CMEEC has plausibly pled a fraudulent inducement claim against Mr. Rankin. *See, e.g., Dubois*, 422 F.Supp.3d at 561 ("I conclude that these allegations – coupled with the surrounding factual allegations concerning the parties' course of dealing, which suggests a financial motive for [one of the defendants] to misrepresent the facts – are sufficient to allege fraud with particularity.").

Accordingly, Mr. Rankin's motion to dismiss CMEEC's fraudulent inducement claim will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction, ECF No. 55, is **DENIED** and the Plaintiff's motion to dismiss the Defendant's Counterclaim, ECF No. 65, is **DENIED.**

**SO ORDERED** at New Haven, Connecticut, this 31th day of March, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE